COMMONWEALTH vs. HUBERT W. HAWKES, JR.

Suffolk. November 6, 1972. — January 10, 1973.

Present: TAURO, C.J., REARDON, HENNESSEY, KAPLAN, & WILKINS, JJ.

*Search and Seizure.*

A police officer who had lawfully stopped a motorist had reason to believe he was in danger after the motorist made a "pretty fast" movement with his left hand toward the left side of his own jacket where there was a bulge; and the officer lawfully searched only the interior of the left side of the man's jacket and seized the marihuana he found there. [788–790]

The observation and seizure of two packages of marihuana which were in open view in the rear of an automobile did not constitute a search within the meaning of the Fourth Amendment. [790]

INDICTMENT found and returned in the Superior Court on February 12, 1971.

The case was heard by *Forte,* J.

*Martin Kantrovitz* for the defendant.

*Richard E. Rafferty,* Assistant District Attorney (*Richard G. Pizzano,* Assistant District Attorney, with him) for the Commonwealth.

REARDON, J. The defendant was tried jury waived on indictments for the possession of a narcotic drug with intent to sell unlawfully, and for the unlawful possession of a narcotic drug. He was found guilty on each indictment, and was given a suspended sentence on one. The second was placed on file. The case, which was tried under the provisions of G. L. c. 278, §§ 33A–33G, inclusive, is here on an assignment of errors, three of which are argued. Error is alleged in the denial of the defendant's motion to suppress certain evidence seized during a search, in admitting the said items in evidence, and in denying the defendant's motion for a finding of not guilty.

The judge could have found as follows. On January 13, 1971, around 10:40 P.M., the defendant was operating

a motor vehicle on Pleasant Street in Dorchester when he was observed by police officers of the Boston tactical patrol force patrolling in a police cruiser who noticed that his car was being driven "somewhat erratically." On one or two occasions its left side wheels had crossed the center line of the street. When the vehicle driven by the defendant arrived at the intersection of Pond Street and Columbia Road he made a right turn without stopping at a stop sign and continued another several hundred yards on Columbia Road until he was stopped by signals from the police cruiser. Officer Thomas Walsh alighted and approached the defendant's car and asked the defendant through an open car window for his license and registration. It was not then his intention to arrest the defendant, and he was uncertain whether or not he was going to give him a traffic ticket. The defendant was wearing a heavy blue parka which was partly zipped closed. The officer observed that the defendant seemed "scared." Upon the request from the officer the defendant reached in his right hip pocket as if to get his license and registration, at which point the officer asked him to turn off the ignition. The officer observed that the ignition was damaged but that the key was in it. The defendant then moved his left hand "[p]retty fast" to the area of the pocket on the jacket "up over the left lower side of his jacket." At this point Officer Walsh suspected that the defendant was in possession of a weapon. He grabbed the defendant's left hand and pulled it up, meanwhile drawing his service revolver and telling him not to move. Officer Walsh then noticed a "bulge" in the defendant's jacket in the area of the "left side of . . . [the defendant's] chest." Officer Brendan Flynn, who had been patrolling in company with Officer Walsh, on seeing Walsh draw his gun got out of the car and came to his assistance. Walsh told Flynn, "This guy has got a gun," and indicated the area of the bulge. Flynn reached in and drew from inside the defendant's jacket a package about four and one-half by two and one-half by eight inches. This package Flynn determined contained marihuana. The

defendant was ordered from the car and searched, a wallet being found in his rear pants pocket, and two other packages of marihuana were discovered in the back of the car open to view in the well lighted area where the incident occurred. There was no warrant for arrest or for a search, and no allegation that the defendant consented to any part of the search. In disposing of the motion to suppress, the trial judge found that the officers had probable cause to believe that the defendant had a gun and therefore had a right to arrest without a warrant and to conduct the search. The question before us is whether this is a "reasonable" search in Fourth Amendment terms as being incident to a lawful arrest or as necessary to protect the officers in the course of their investigation.

We need not decide whether the police officers here had probable cause to arrest the defendant and whether the search was properly incident to that arrest. The Supreme Court of the United States in *Terry* v. *Ohio,* 392 U. S. 1, recognizing the complexity and variety of police work and the necessity for a flexible, escalating set of responses, made it clear that in some circumstances a search may be "reasonable" within the meaning of the Fourth Amendment even if there was no probable cause. The court held that "there must be a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Id.* at 27.

Since they had observed the defendant go through a stop sign, the police officers clearly had a right to stop him. The question is whether the search which they conducted subsequent to that stop was justified under the standard established by the *Terry* case. We turn thus to

consider whether the police officers in this case reasonably believed that they were in danger. Their attention was originally focused on the defendant because of his erratic operation of a motor vehicle. It was late at night. When Officer Walsh approached the defendant's car the defendant look "scared." The defendant reached in his right hip pocket but produced nothing. After turning off the ignition, at the officer's request, he made a "[p]retty fast" movement with his left hand toward the left side of his parka. Officer Walsh, an experienced policeman, may well have believed that the defendant was reaching for a gun. His almost instinctive attempt to restrain the defendant's hand under these circumstances can hardly be seen as a flight of imaginative fancy or calculated harassment. Moreover, as he grabbed the defendant's hand Officer Walsh noticed the bulge in his jacket. This, in addition to the defendant's frightened demeanor and rapid movement, warranted Officer Walsh's belief, communicated to Officer Flynn who conducted the search, that the defendant had a gun. Circumstances such as these might well tend to produce a dead or wounded policeman.

In *Commonwealth* v. *Matthews*, 355 Mass. 378, we upheld a search under the principles laid down by the *Terry* case in an instance of an individual's being abroad at 2:50 A.M. in suspicious circumstances. In *United States* v. *Marshall*, 440 F. 2d 195 (D. C. Cir. 1970), the court likewise upheld a search under the *Terry* principles, emphasizing the "totality" of the circumstances and the fact that police had been shot in the area. Also in that case, the police observed at 12:15 A.M. the defendant engaged in five turns within three or four minutes, following which he stopped his car, leaving it partly on the street with its headlights lighted before running from the car. He returned upon the call of a policeman to him and produced his license, at which time the police noticed a bulge under his sweater and extracted therefrom a gun.

Under the *Terry* case a search must be reasonable in its extent as well as in its origin. Here the defendant remained seated in his car. No over-all search was ini-

tially conducted. The attention of the police officers was obviously focused on the bulge under the defendant's jacket. Officer Flynn, touching the bulge, felt a "package"; there was nothing in his perception to indicate it was not a weapon either because of size or density. Officer Flynn's search, which involved reaching into the defendant's partly unzipped jacket and extracting the package, was a limited intrusion designed to insure his safety in circumstances which indicated he and Officer Walsh were in danger, and we believe it was reasonable. See *Adams* v. *Williams,* 407 U. S. 143, 148. Cf. *Commonwealth* v. *Ballou,* 350 Mass. 751.

It remains only to state relative to the two other bricks of marihuana in open view in the rear of the automobile that observation and seizure of them did not constitute a search within the meaning of the Fourth Amendment. *Commonwealth* v. *Campbell,* 352 Mass. 387, 402, and cases cited.

*Judgment affirmed.*