## COMMONWEALTH vs. JAMES ANDERSON.

Suffolk.   September 17, 1974. — November 14, 1974.

Present: TAURO, C.J., REARDON, BRAUCHER, HENNESSEY, & WILKINS, JJ.

*"Threshold" Police Inquiry.   Search and Seizure.   Constitutional Law,* Search and seizure.

Where it appeared in a narcotics case that a message written by an anonymous informant on a bus, containing a description of a passenger on the bus and statements that he was "armed" and "dangerous" and had a paper bag and narcotics, reached a police officer at a bus terminal, that when the bus arrived at the terminal the officer observed a passenger, the defendant, matching the description in the message and carrying a paper bag get off the bus and walk toward the exit from the terminal, looking back at the officer at times, that upon other officers appearing the defendant made a "gesture" to throw away the bag, that the first officer then grabbed his wrist and the bag fell to the floor, and that that officer accidentally picked up the bag by the wrong end, causing its contents, including heroin but no weapon, to be spilled on the floor, it was held that there was a proper threshold inquiry and that seizure of the heroin and its use at the defendant's trial were justified under the "plain view" doctrine. [395-401]

INDICTMENT found and returned in the Superior Court on September 22, 1972.

A pre-trial motion to suppress was heard by *Travers,* J., and the case was tried before him.

*David M. Skeels* for the defendant.

*Joseph E. Coffey,* Special Assistant District Attorney, for the Commonwealth.

REARDON, J.   The defendant was sentenced to the Massachusetts Correctional Institution at Concord following his convictions before a judge and a jury for possession of a

hypodermic needle and three syringes, and possession of heroin with intent to distribute it. He had filed a motion to suppress prior to trial which was denied, and the sole issue is whether there was error in the court's action. The appeal is here under the provisions of G. L. c. 278, §§ 33A-33G.

Following the hearing on the motion to suppress, the judge made extensive findings. We summarize the evidence which the judge could have found.

The sole witness for the Commonwealth was Officer William H. Kennefick, Jr., of the Boston tactical patrol force. On August 24, 1972, while in uniform, he was on duty on a paid detail at the Greyhound bus terminal in Boston, and about 12:20 A.M., having been summoned to the dispatcher's booth, was handed a page from a newspaper called the "Good News of Jesus," published in New Jersey. Written on the newspaper was the message, "New York to Boston. Please get the Boston Police. Bus terminal Boston Greyhound. 1 Man Armed & Dangerous. Black. Blue hat. Brown Paper Bag. Important! has Narcotics. This is No Joke." The message was unsigned. The officer was told by the dispatcher that a bus driver had just handed it to him, the bus driver stating that he had been given the paper as he went through a toll booth on the road from New York to Boston. The toll booth operator had told the bus driver that the newspaper had been thrown into the toll booth shortly before by someone in a New York to Boston bus. The bus driver also told the dispatcher that he had passed the other New York to Boston bus and arrived at the terminal a brief period ahead of it. Soon after the dispatcher conveyed this information to Officer Kennefick a New York to Boston bus arrived at the terminal, and the first man to alight from the bus was the defendant, who was black, wore a blue hat, a T-shirt and dungarees, and carried a brown paper bag somewhat larger than an ordinary lunch bag. The officer indicated to two other uniformed police officers who had entered the terminal that he had a suspect and that they should cut off the street exit of the terminal. The defendant noticed Kennefick and walked briskly toward the interior of the terminal, looking back on certain occasions at

Kennefick who was behind him at a distance of four to five feet. The defendant progressed approximately fifty to seventy-five feet across the terminal lobby to the exit door, at which point the other two officers entered through the doors. The defendant hesitated and then made a "gesture" as if attempting to get rid of the bag in his hand. Officer Kennefick grabbed his wrist and shoved him against the wall, whereupon the bag fell to the floor. Tho other two officers also reached the defendant and began a pat-down. While the pat-down was proceeding, Kennefick, keeping his eyes on the defendant and holding his hand, groped for the bag which he accidentally picked up by the wrong end, with the result that the contents spilled on the floor. The contents consisted of three balls partially covered in aluminum foil and partially in cellophane. Through the cellophane Officer Kennefick could see numerous small envelopes containing white powder.

After retrieving the bag, Officer Kennefick handcuffed the defendant and placed him under arrest. A search of the defendant's person revealed three syringes, a cooking cap, a hypodermic needle, a rain bonnet, and two small cellophane envelopes containing white powder. No weapons were found on the defendant or in the bag. The envelopes discovered in the paper bag proved on analysis to contain heroin and were introduced in evidence, as were the syringes and the two envelopes found on the defendant's person, also containing heroin.

The judge made no finding as to whether the police had probable cause to arrest the defendant and as to whether the search was incident to that arrest. He did rule, however, that the search was a search for weapons for the protection of the police officer and that it was "carefully limited to an intrusion that did not go beyond reasonable limits." See G. L. c. 41, § 98, as amended through St. 1967, c. 368. Prior to so ruling he specifically found that when Officer Kennefick "was reaching down and groping for the bag, he was doing so with the intention of attempting to ascertain whether or not it contained a gun." The sole question on

appeal is whether in the circumstances set out above the defendant's constitutional rights were violated.

Each threshold inquiry raises the question whether there has been a Fourth Amendment violation. *Terry* v. *Ohio,* 392 U. S. 1 (1968). But within the confines of the Fourth Amendment, a "brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time." *Adams* v. *Williams,* 407 U. S. 143, 146 (1972). Where the officer has reason to believe that a suspect is armed and presently dangerous to him or others, a limited search is authorized to neutralize that threat. *Commonwealth* v. *Lehan,* 347 Mass. 197 (1964). *Commonwealth* v. *Salerno,* 356 Mass. 642 (1970). *Commonwealth* v. *Wilson,* 360 Mass. 557 (1971). *Commonwealth* v. *Hawkes,* 362 Mass. 786 (1973). *Terry* v. *Ohio, supra,* at 24. But "in justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry* v. *Ohio, supra,* at 21.

The facts on which Officer Kennefick acted here consisted entirely of the handwritten message and the suspicious behavior of a suspect fitting the description in the note which the officer had received. He thus was acting on information provided anonymously. We inquire whether his action on such information is "reasonable" within the defined limits of a threshold inquiry.

There is a long line of cases dealing with informants' tips in the context of probable cause to arrest which require generally (1) a showing that the informant was trustworthy, and (2) a further showing of the underlying facts and circumstances on which his information was based sufficient to demonstrate the reliability of the information. *Commonwealth* v. *Avery,* 365 Mass. 59, 62-63 (1974). *Aguilar* v. *Texas,* 378 U. S. 108, 112-116 (1964). *Spinelli* v. *United States,* 393 U. S. 410, 415-416 (1969).

Where the tip fails to meet this two-pronged test, there must be sufficient independent corroboration to insure trustworthiness. *Commonwealth* v. *Stevens,* 362 Mass. 24, 27-28 (1972). *Commonwealth* v. *Avery,* 365 Mass. 59, 63 (1974). *Draper* v. *United States,* 358 U. S. 307 (1959). *Spinelli* v. *United States, supra,* at 415-416. However, in *Adams* v. *Williams,* 407 U. S. 143, 147 (1972), the most recent United States Supreme Court decision on "stop and frisk," the court veered away from the two-pronged test for threshold inquiries based on an informant's tips, emphasizing that while an unverified tip may not suffice for arrest or warrant it may carry enough "indicia of reliability" to justify a threshold inquiry. The *Adams* case does not lay down any definite test in these situations, pointing out that tips may vary in reliability and that no one rule can supply all the answers. In the tip of the *Adams* case, for instance, the informant was known to the officer personally and had provided previous information, but the tip failed to state underlying facts on which the information was based.

In Massachusetts, most cases upholding a "stop and frisk" have relied on the personal observations of the police officer which gave him grounds for suspicion and reason to fear that the defendant may be armed and dangerous. See *Commonwealth* v. *Lehan,* 347 Mass. 197 (1964); *Commonwealth* v. *Roy,* 349 Mass. 224 (1965); *Commonwealth* v. *Dottin,* 353 Mass. 439 (1968); *Commonwealth* v. *Matthews,* 355 Mass. 378 (1969); *Commonwealth* v. *Salerno,* 356 Mass. 642 (1970); *Commonwealth* v. *Hawkes,* 362 Mass. 786 (1973). We have had one case involving an anonymous tip which was decided before the *Terry* case. In *Commonwealth* v. *Ballou,* 350 Mass. 751 (1966), cert. den. 385 U. S. 1031 (1967), the police received an anonymous telephone tip that the defendant was in a certain cafe in possession of a gun. The court upheld a threshold inquiry and pat-down stating, "That the original source of information was an anonymous tip . . . is not of importance ." *Id.* at 756. See *Ballou* v. *Massachusetts,* 403 F. 2d 982 (1st Cir. 1968) (denying writ of habeas corpus in same case). In the

*Ballou* case, it should be noted that the police were familiar
with the defendant who had a reputation for carrying a gun,
evidenced by a prior conviction on such a charge. There
thus existed some corroboration of the tip.

Recently other courts have validated a "stop and frisk"
on the basis of anonymous information. *United States* v.
*Unverzagt,* 424 F. 2d 396 (8th Cir. 1970) (tip from unknown
informant that the defendant attempted to sell him postal
money orders, cited with approval in *Adams* v. *Williams,*
407 U. S. 143, 146 [1972]). *United States* v. *Legato,* 480
F. 2d 408 (5th Cir. 1973), cert. den. 414 U. S. 979 (1973) (tip
that someone carrying a bomb in an orange bag would
attempt to board flight to Chicago). *United States* v.
*Hernandez,* 486 F. 2d 614 (7th Cir. 1973), cert. den. 415
U. S. 959 (1974) (tip as to van carrying possibly illegal
aliens, corroborated by observation). *People* v. *Arthurs,* 24
N. Y. 2d 688 (1969) (information from anonymous passers-
by). Contra, *United States* v. *Pearce,* 356 F. Supp. 756,
759-760 (E. D. Pa. 1973) (anonymous informant lacked
necessary indicia of reliability).

In this case we are of opinion that there exist indicia of
reliability to sustain the police officer's actions. First, the
inference could be drawn from the note that the informant
was on the same bus as the defendant and very probably
based his information on personal observations. The brev-
ity and the lack of detail of the note are explainable by a
need to act quickly in getting the message to the toll booth
operator for the authorities. It is not unimportant that the
message was in writing and was passed on by some
disinterested citizen, thus eliminating the possibility of a
police fabrication which is a principal concern in assessing
the propriety of a threshold inquiry launched by an
anonymous tip. See *Williams* v. *Adams,* 436 F. 2d 30, 38-39
(2d Cir. 1970) (Friendly, J., dissenting), revd. en banc 441
F. 2d 394 (2d Cir. 1971), revd. 407 U. S. 143 (1972); Note,
The Supreme Court, 1971 Term, 86 Harv. L. Rev. 1, 179-
180 (1972). Officer Kennefick's action can hardly be viewed
as a "flight of imaginative fancy or calculated harass-
ment." *Commonwealth* v. *Hawkes,* 362 Mass. 786, 789

(1973). The credibility of the note was further enhanced by the accuracy of its predictions. The defendant emerging from the New York bus was indeed accurately described in the note. Cf. *Commonwealth* v. *Kane,* 362 Mass. 656 (1972); *Commonwealth* v. *Avery,* 365 Mass. 59 (1974); *Draper* v. *United States,* 358 U. S. 307 (1959). In addition, the officer observed the defendant acting somewhat suspiciously in looking back over his shoulder, which lends some corroborative effect to the facts known to the police. See *Commonwealth* v. *Roy,* 349 Mass. 224, 228 (1965) (threshold inquiry after the defendant averted eyes from police). In our view the foregoing facts considered together with reasonable inferences suffice to justify the threshold inquiry. Moreover, since the note referred to the suspect as "Armed & Dangerous," the police could reasonably fear that he might attempt to escape by using arms and were thus justified in making a weapons search for their protection. *Terry* v. *Ohio,* 392 U. S. 1, 24-27 (1968). G. L. c. 41, § 98. Nor were they required to identify themselves or make verbal inquiry before undertaking the search. See *Adams* v. *Williams,* 407 U. S. 143 (1972).

It is the contention of the defendant that even if the police were justified in making a protective weapons search, the search of the paper bag was still unreasonable because the police had no reason to believe, and in fact did not believe, the bag contained a weapon. It is undeniable that the police could not search the bag for evidence in furtherance of the threshold inquiry. *Commonwealth* v. *Lehan,* 347 Mass. 197, 204-205 (1964). *Terry* v. *Ohio,* 392 U. S. 1, 26 (1968). It is not unreasonable to consider that a weapon might be found in such a bag, and the judge so found. See *United States* v. *Sims,* 450 F. 2d 261, 263 (4th Cir. 1971). But the defendant argues that when confronted by the police he made a gesture as if attempting to get rid of the bag in his hand, which suggests that it contained drugs rather than a weapon. A colloquy, which is the only

discussion on the point at the hearing on the motion to suppress, is of bearing here.[1]

The defendant argues from the colloquy, which is somewhat ambiguous, that the officer was not considering that there might be a weapon in the bag when he picked it up, but we are dealing with a situation in which split-second decisions had to be made and we are not going to say that the judge could not have found that the officer reached for the bag almost instinctively in his search for weapons whether he necessarily planned it or not. We accept his finding, and it follows that the discovery of the heroin which fell out of the bag is justifiable under the "plain view" doctrine, which permits the officer to seize evidence where he has a prior justification for an intrusion and inadvertently comes across such evidence incriminating the suspect. *Commonwealth* v. *Wilson,* 360 Mass. 557, 560 (1971). *Commonwealth* v. *Hawkes,* 362 Mass. 786, 789-790 (1973). *Commonwealth* v. *Rand,* 363 Mass. 554, 557-559 (1973). *Commonwealth* v. *Cook,* 364 Mass. 767, 771 (1974). *Coolidge* v. *New Hampshire,* 403 U. S. 443, 464-473 (1971).

In sum it is our conclusion that, given these circumstances, what occurred here was a proper threshold inquiry producing evidence which was justifiably employed in the trial against the defendant. We see no error.

*Judgments affirmed.*

---

[1] COUNSEL FOR THE DEFENDANT: "You were looking to see if there were drugs in that bag, isn't that correct?"

THE WITNESS: "The bag at that particular moment was the last thing in my mind."

COUNSEL FOR THE DEFENDANT: "The last thing in your mind?"

THE WITNESS: "Right. We were looking for a gun."