COMMONWEALTH *vs.* WAYNE LYONS
(and a companion case[1]).

Essex. October 2, 1990. - December 26, 1990.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, & O'CONNOR, JJ.

*Search and Seizure*, Automobile, Threshold police inquiry. *Constitutional Law*, Search and seizure.

An anonymous telephone call did not provide police with sufficient articulable facts to justify an investigatory stop of an automobile, where the call provided no information regarding either the basis of the informant's knowledge or his reliability and where the quantity and quality of the details corroborated by the police were insufficient to establish a degree of suspicion that could be deemed reasonable. [18-22] NOLAN, J., dissenting.

INDICTMENTS found and returned in the Superior Court Department on December 14, 1988.

Pretrial motions to suppress evidence were heard by *John P. Forte*, J., sitting under statutory authority.

An application for an interlocutory appeal was allowed by *Wilkins*, J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by him.

*Philip J. Coppola* for Randy S. Smart.

*Dyanne J. Klein*, Assistant District Attorney, for the Commonwealth.

*Andrew M. Gradzewicz*, for Wayne Lyons, was present but did not argue.

ABRAMS, J. At issue is the correctness of an order denying the defendants' motions to suppress evidence obtained as a result of a decision by a State trooper to stop the automobile containing the defendants as it headed north on Interstate

---

[1]Commonwealth *vs.* Randy S. Smart.

95. The automobile was stopped on the basis of information provided by an anonymous informant. As a result of the stop, the police obtained evidence inculpating the defendants. An Essex County grand jury indicted the defendants for possession of a Class B substance (cocaine) with intent to distribute. See G. L. c. 94C, §§ 31, 32A. The defendants' main issue is that the police lacked reasonable suspicion to stop the automobile. After an evidentiary hearing, the defendants' motions to suppress the evidence were denied. The defendants applied to a single justice for leave to appeal. See Mass. R. Crim. P. 15 (b) (2), 378 Mass. 884 (1979). The single justice allowed the defendants' application for leave to appeal and reported the appeal to this court. We reverse the orders denying the defendants' motions to suppress.

We summarize the facts found by the motion judge. At or about 1:15 A.M. on September 10, 1988, the State police received an anonymous telephone call stating that two white males, one of whom was named Wayne, had just purchased narcotics in Chelsea and would be heading for Bridgton, Maine. The caller said they would be driving in a silver Hyundai automobile with Maine registration 440-44T.

The police thereafter set up one surveillance position on the northbound side of Interstate 95, and another on Route 1 north, the two roads that the judge found to be the basic routes between Chelsea and Bridgton.

At about 2 A.M., State Trooper Albert Manzi observed two white males in a silver Hyundai with the indicated registration number pass his surveillance point on Interstate Route 95. After radioing for assistance, he stopped the vehicle and asked the driver for a license and registration. The license identified the driver as Wayne Lyons of Bridgton, Maine. Manzi, a police officer with "extensive experience in narcotics work," then observed a rolled-up United States currency note on the console between the driver and passenger seats. He recognized the "bill-straw" as a usual implement for snorting narcotics. He also saw a brown tray on the driver's floor that contained a white powder that could have been cocaine. He ordered the men out of the car. A search of the

passenger, Randy Smart, revealed a bag of white powder, which, after analysis, was determined to be cocaine. The police arrested both men.[2]

The Commonwealth argues that we should determine the legality of the stop pursuant to a "totality of the circumstances" standard. See *Alabama* v. *White*, 110 S.Ct. 2412 (1990); *Illinois* v. *Gates*, 462 U.S. 213 (1983). We decline to do so. In the probable cause context, "[w]e [have] rejected the 'totality of the circumstances' test now espoused by a majority of the United States Supreme Court. That standard is flexible, but is also 'unacceptably shapeless and permissive.' *Commonwealth* v. *Upton*, 390 Mass. [562, 574 (1983), rev'd, 466 U.S. 727 (1984)]. The Federal test lacks the precision that we believe can and should be articulated in stating a test for determining probable cause. The 'totality of the circumstances' test . . . has been applied where no more definite, universal standard could reasonably be developed." *Commonwealth* v. *Upton*, 394 Mass. 363, 373 (1985). We likewise see no reason to use that test in evaluating reasonable suspicion. We conclude that we shall adhere to a "reasonable suspicion" standard as set forth in our cases to determine justification for the stop.[3]

---

[2]The defendants do not challenge the judge's ruling that once the police saw the bill-straw and white powder in the vehicle they had probable cause to search the vehicle and the defendants.

We note that the parties argue at length whether the police action was an investigatory stop or an arrest. The motion judge did not specifically find that the police positioned their cruisers around the defendants' vehicle, nor even that more than one police officer was involved. For purpose of this opinion, we assume in favor of the Commonwealth that the police action was an investigatory stop. We note that the dissent does not discuss whether the stop was lawful as an investigatory stop or as an arrest even though such discussion is required to support the dissent's conclusion.

[3]At least one other State has followed a similar course in interpreting the search and seizure provisions of its own Constitution. The Tennessee courts, having rejected the *Gates* totality of the circumstances approach to probable cause, have decided to adhere to the pre-*Gates* "indicia of reliability" standard articulated in *Adams* v. *Williams*, 407 U.S. 143 (1972),

To meet the "reasonable suspicion" standard in this Commonwealth, police action must be "based on specific, articulable facts and reasonable inferences therefrom" rather than on a "hunch." *Commonwealth* v. *Wren*, 391 Mass. 705, 707 (1984), and cases cited. Thus, if the police conduct an investigatory stop based on an informant's tip, our evaluation of the tip's indicia of reliability will be focused on the informant's reliability and his or her basis of knowledge. Independent police corroboration may make up for deficiencies in one or both of these factors. Because the standard is reasonable suspicion rather than probable cause, a less rigorous showing in each of these areas is permissible.

An investigatory automobile stop requires that the Commonwealth prove that the officer "has a reasonable suspicion that the occupants have committed, are committing, or are about to commit a crime." *Commonwealth* v. *Wren, supra* at 707. See *Commonwealth* v. *Anderson*, 366 Mass. 394 (1974).

In *Anderson*, police received a written anonymous note from a bus passenger stating that a black man with a blue hat on the bus possessed a brown paper bag containing narcotics and was armed and dangerous. Police met the bus and observed a passenger get off who fit the description and who was walking briskly, looking over his shoulder at the police. When he saw the police, the man attempted to dispose of the bag. We upheld the "stop and frisk" of the man because the

in evaluating the reasonableness of investigatory stops effected pursuant to informants' tips. See *State* v. *Coleman*, 791 S.W.2d 504, 506-507 (Tenn. Crim. App. 1989).

Other States, while not explicitly diverging from the Federal court holdings, have articulated a reasonable suspicion standard resting on the informant's reliability and basis of knowledge. See *Allen* v. *State*, 781 P.2d 992 (Alaska Ct. App. 1989); *State* v. *Conner*, 58 Wash. App. 90, 95 (1990), citing *State* v. *Lesnick*, 10 Wash. App. 281, 285 (1973), cert. denied, 423 U.S. 891 (1975).

A number of opinions that have been issued in the short time since *White* was decided have followed and applied the Federal standard enunciated therein. See, e.g., *State* v. *Richardson*, 156 Wis.2d 128, 141-142 (1990); *Davis* v. *State*, 794 S.W.2d 123 (Tex. Ct. App. 1990); *State* v. *Ramsey*, Nos. 89AP-1298 & 89AP-1299 (Ohio Ct. App. 1990).

tip and its corroboration contained enough indicia of reliability to justify the limited police action. We observed that the police reasonably could have inferred that one of the other bus passengers wrote the note, so that the informant's knowledge was based on personal observation. The fact that the tip was in writing was "not unimportant" because it "eliminat[ed] the possibility of a police fabrication which is a principal concern in assessing the propriety of a threshold inquiry launched by an anonymous tip." *Id.* at 399. The reliability of the tip was further enhanced by independent police corroboration of both the description of the defendant, and his suspicious behavior. Taken together, these facts and inferences provided objective criteria justifying the threshold inquiry. We upheld the police action because the tip had "indicia of reliability." *Id.* at 398-399. We have applied that analysis in other cases. See, e.g., *Commonwealth* v. *Robinson*, 403 Mass. 163, 166 (1988); *Commonwealth* v. *Santana*, 403 Mass. 167, 170-171 (1988); *Commonwealth* v. *Gonzalez*, 403 Mass. 172, 174-175 (1988); *Commonwealth* v. *Farrow*, 403 Mass. 176, 177-178 (1988); *Commonwealth* v. *Spence*, 403 Mass. 179, 181 (1988).

Applying this approach to the case at hand, we conclude that the police did not have sufficient articulable facts for the investigatory stop. The tip provided no information regarding either the basis of the informant's knowledge or his reliability. Furthermore, the quantity and quality of the details corroborated by the police were simply insufficient to establish any degree of suspicion that could be deemed reasonable. The trooper was able to verify only the description of the automobile, the direction in which it was headed, and the race and gender of the occupants before making the stop.[4] These details do not reveal any special familiarity with the defendants' affairs that might substitute for explicit information about the basis of the caller's knowledge. Indeed, an-

[4]The defendant Lyons's first name was not verified until *after* Manzi stopped the automobile and therefore cannot be treated as a corroborated detail justifying the stop.

other driver equipped with a car telephone could have provided the same details. Likewise, the informant's reliability was only slightly enhanced by this corroboration because the police verified no predictive details that were not easily obtainable by an uninformed bystander. The corroboration went only to obvious details, not nonobvious details. Significantly, unlike *Anderson,* these defendants displayed no suspicious behavior that might have heightened police concern.[5] Anyone can telephone the police for any reason. Thus, some

---

[5]The Commonwealth relies on *Alabama* v. *White,* 110 S.Ct. 2412 (1990), in which the Supreme Court recently upheld an investigatory stop based on police corroboration of nonincriminating details provided in an anonymous tip. The analysis in *White,* however, was based on a consideration whether the "totality of the circumstances" provided the requisite reasonable suspicion.

Further, we note that it is not clear that the stop in this case would be upheld even under the standard articulated in *White.* In *White,* police corroborated the informant's predictions that a woman would leave a particular apartment building within a particular time frame, get into a particular automobile, and drive to a particular location. When the woman had nearly reached the predicted destination, the police stopped her. The Supreme Court noted that, although the route taken by the woman was the most direct, the route involved several turns. The Supreme Court stated that the "respondent's destination was significantly corroborated." *Id.* at 2417. The Supreme Court upheld the stop, noting that it was a "close case." The Supreme Court ultimately was persuaded by the informant's ability to predict "future behavior [i.e., the time and place of departure, the car to be utilized, and the destination] because it demonstrated inside information — a special familiarity with respondent's affairs." *Id.* In the case at bar, no future behavior was verified. The only facts corroborated were descriptive obvious details — the defendants' race and gender, the automobile in which they were driving (*not* the automobile which they would get into in the future) and the direction in which they were traveling (north) — that did not bespeak the kind of "inside information" crucial to the holding in *White.* There was no corroboration of any details indicating special familiarity.

The dissent considers the fact that an automobile with a Maine registration plate was headed north toward Maine as indicating insider information. We believe that fact is insufficient to indicate insider information because, in this case, the point of departure was not verified, the destination was not close, and the route followed was unknown. Indeed, the police also were stationed on Route 1, the other route north. Moreover, the tip indicated only that the men *would be* heading for Bridgton; it did not say *when* they would be leaving. Thus, contrary to the dissent's assertion, the time was not corroborated. These facts distinguish this case from *White.*

specificity of nonobvious facts which show familiarity with
the suspect or specific facts which predict behavior is central
to reasonable suspicion. By using objective criteria, the risk
of arbitrary action and abusive practices by police is
diminished.

Because the anonymous tip and police corroboration did
not establish a reasonable suspicion to stop these defendants,
the orders denying the motions to suppress are reversed. The
cases are remanded to the Superior Court for further
proceedings.

*So ordered.*

NOLAN, J. (dissenting). I recognize that, without some in-
dicia of reliability, an anonymous tip cannot provide reasona-
ble suspicion sufficient to justify an investigative stop. How-
ever, the United States Supreme Court has recently held, on
almost identical facts, that an anonymous telephone tip, as
corroborated by independent police observations, has suffi-
cient indicia of reliability to provide reasonable suspicion to
make an investigatory stop. *Alabama* v. *White*, 110 S. Ct.
2412 (1990). In *White*, the police received an anonymous
telephone tip that the respondent would be leaving a certain
apartment building, at a certain time, in a certain vehicle,
headed to a certain destination (motel), and would be in pos-
session of cocaine. *Id.* at 2414. The police then corroborated
that the respondent left the apartment building, that she en-
tered the described vehicle and that she drove the most direct
route to the reported destination. The police then pulled the
vehicle over and made an investigatory stop just short of the
destination. The Supreme Court upheld the stop.

The court distinguishes *White* from this case by stating
that the decision was based on a "totality of the circum-
stances" test which has been rejected by this court. However,
even under the standard espoused by the court today, I
would rule that the search was reasonable. The court states:
"[I]f the police conduct an investigatory stop based on an

informant's tip, our evaluation of the tip's indicia of reliability will be focused on the informant's reliability and his or her basis of knowledge. *Independent police corroboration may make up for deficiencies in one or both of these factors*" (emphasis added). *Ante* at 19.

The court recognizes that, "[b]ecause the standard [for an investigative stop] is reasonable suspicion rather than probable cause, a less rigorous showing in each of these areas is permissible." *Ante* at 19. It follows that less rigorous independent corroboration is also permissible. In this case there was sufficient corroboration to make the officer's suspicions reasonable and the stop permissible even under the court's test.

The officer set up a stakeout in Newburyport on Interstate 95, the logical route from Chelsea to Maine. At about 2 A.M., some forty-five minutes after the vehicle had reportedly left Chelsea, the officer saw two white males in a silver Hyundai automobile with Maine registration number 440-44T, heading toward Maine. In short, everything which could be externally ascertained about the veracity of the tip was confirmed.

The court asserts that the tip was deficient in that it demonstrated no familiarity with the defendants' affairs and the police did not corroborate any predictive details that were not easily ascertainable by an uninformed bystander. This analysis is overly strict. At least where the standard is reasonable suspicion, the corroboration which the officer made was sufficient to compensate for the lack of information relative to both the reliability of the informant and the basis of the informant's knowledge.

The officer was able to corroborate that the informant knew of the activities of the defendants by spotting the vehicle on a route to Maine, within an accurate time frame after it reportedly left Chelsea. The informant was able to predict where the defendants would be at a certain time. Such accurate prediction of future events certainly lends credence to the rest of the informant's story that criminal activity was afoot.

The court asserts that "another driver equipped with a car telephone could have provided the same details." *Ante* at 20-21. In order to do so, that other driver would have to predict accurately that the car was going to head to Maine from Chelsea. Even assuming that the Maine registration number made such a prediction possible, reasonable suspicion is not defeated. Simply because we can imagine some scenario in which the tip is false, we should not find reasonable suspicion lacking. In this case, the officer had specific, articulable facts on which to base his suspicion; he did not stop the vehicle on a "hunch." I would hold that the initial stop of the vehicle fully comported with all constitutional requirements.

Once again, the court succeeds in imposing its own limitations on the power available to police officers to protect the public. I dissent.