COMMONWEALTH *vs.* ALEX ALVARADO, JR.

No. 94-P-812.

Essex. February 10, 1995. - June 22, 1995.

Present: BROWN, IRELAND, & LAURENCE, JJ.

Further appellate review granted, 421 Mass. 1103 (1995).

*Search and Seizure*, Threshold police inquiry, Automobile. *Constitutional Law*, Search and seizure.

An anonymous tip to police officers describing a location, a vehicle of a certain color and a number of individuals, and stating that a gun "wrapped in a towel" was in the vehicle bore sufficient indicia of reliability to give reasonable suspicion for the officers to stop the described vehicle at the named location within ten minutes of receiving the information: a gun, wrapped in a towel, which was seized from the vehicle's glove compartment during the subsequent search made with the consent of the operator was correctly admitted in evidence. [652-654] BROWN, J., dissenting.

COMPLAINT received and sworn to in the Lawrence Division of the District Court Department on July 15, 1993.

A pretrial motion to suppress evidence was heard by *Ellen Flatley*, J., and the case was heard by *Michael T. Stella*, J.

*Michael Seddon* (*John J. Barter* with him) for the defendant.

*Susanne Levsen*, Assistant District Attorney, for the Commonwealth.

IRELAND, J. The defendant waived his right to a jury trial and was tried before a District Court judge on a complaint charging him with unlawfully carrying a firearm in a motor vehicle, G. L. c. 140, § 131C, knowingly possessing or having under his control a firearm in a vehicle without a license, G. L. c. 269, § 10(*a*), and possessing a firearm without a firearm identification card, G. L. c. 269, § 10(*h*). He was found guilty and has appealed.

The defendant argues that because the police lacked the requisite reasonable suspicion to make a justified *Terry* (*Terry* v. *Ohio*, 392 U.S. 1 [1968]) stop, the handgun found in the glove compartment of the defendant's automobile should be suppressed as "fruit of a poisonous tree." Accordingly, he asks us to reverse his convictions and to remand the matter for entry of judgments of acquittal. We affirm.

We summarize the judge's findings of facts. On July 14, 1993, at approximately 6:30 P.M., Officer Richard Pilz was dispatched to 138 Jackson Street pursuant to an anonymous telephone call. The caller reported seeing "several Hispanic subjects" in a blue automobile in the driveway. The caller further reported that he or she saw a gun inside the vehicle and that it was wrapped in a towel. Located on 138 Jackson Street is a three-story multidwelling house. There is one parking area on the property, approximately twenty-five to thirty feet wide, which serves the tenants' parking needs. The parking area and Jackson Street are connected by a driveway which is approximately ten to fifteen feet wide, only enough for one car to pass at a time.

When the police arrived at 138 Jackson Street, they immediately spotted a blue car with six "Hispanic or Black" people sitting in it. The car was starting to back out of the driveway. Officer Pilz parked his car directly behind the car and turned on his police lights. Officer Fram approached the vehicle, asked the operator (the defendant) for identification, and informed him that the police were "responding to a report of a handgun" in a blue car. The defendant replied that he did not have a gun in the car, but invited Fram to search the car. Thereupon Officers Pilz and Neel searched the car and found a .22 caliber handgun wrapped in a towel in the glove compartment. The defendant was arrested at the scene, and the five passengers in the car were released.

The defendant filed a motion to suppress the handgun on grounds that it was "fruit of a poisonous tree," *Wong Sun* v. *United States*, 371 U.S. 471, 488 (1963), as it was seized as a result of an illegal stop. He asserted that the initial stop of the vehicle was not based on a reasonable suspicion that a

crime was being or about to be committed. The judge below, however, found that the initial stop was based on a reasonable suspicion that a crime had been committed or was about to be committed, see *Terry* v. *Ohio*, 392 U.S. at 20-23, 30, and that the defendant consented to the search which led to the handgun. Therefore, the defendant's motion to suppress the handgun was denied.

An anonymous tip may provide police with a basis for an investigatory stop of a motor vehicle. Cf. *Commonwealth* v. *Lyons*, 409 Mass. 16 (1990). Justification for such a stop must be grounded in "reasonable suspicion," based upon "specific, articulable facts and reasonable inferences therefrom," rather than a mere hunch. *Id.* at 18-19. The Commonwealth must prove that the officer "ha[d] a reasonable suspicion that the occupants have committed, are committing, or are about to commit a crime." *Commonwealth* v. *Wren*, 391 Mass. 705, 707 (1984). Where the issue is reasonable suspicion as opposed to probable cause, a "less rigorous showing" with respect to a tip's reliability and the informant's basis of knowledge is sufficient. *Lyons, supra* at 19. *Commonwealth* v. *Willis*, 415 Mass. 814, 819 (1993).

The defendant analogizes the facts here to those in *Lyons*. In *Lyons*, an anonymous caller stated that two white males had purchased narcotics and were headed for Bridgton, Maine. 409 Mass. at 17. The caller further stated that the white males would be in a "silver Hyundai automobile with Maine registration [number] 440-44T." *Ibid.* The police had set up roadblocks on the two different roads leading from Massachusetts toward Bridgton, Maine. Approximately forty-five minutes after receiving the call, the police stopped a car which matched the description given by the caller. The court held that the initial stop was not grounded in reasonable suspicion because the tip did not have the indicia of reliability. The only facts that the police corroborated were "the description of the automobile, the direction in which it was headed, and the race and gender of the occupants before making the stop." *Id.* at 20. The circumstances in this case are different.

First, the tip in this case involved a gun. The element of imminent danger distinguishes a tip involving a gun from one involving possession of drugs. Our cases have upheld investigatory stops based on anonymous tips of the sort here involved where the circumstances reasonably indicated potential danger to the public from an armed man or other imminent emergencies requiring immediate action. See *Commonwealth* v. *Anderson*, 366 Mass. 394, 399-400 (1974); *Commonwealth* v. *McCauley*, 11 Mass. App. Ct. 780, 781-782 (1981); *Commonwealth* v. *Fitzgibbons*, 23 Mass. App. Ct. 301, 302-303 & n.2 (1986); *Commonwealth* v. *Hurd*, 29 Mass. App. Ct. 929, 930 (1990).

Second, unlike the initial stop in *Lyons* which occurred nearly an hour after the tip was received, the stop here occurred almost immediately after the police received the tip. Within ten minutes, the police corroborated the tip and stopped a blue car with six Hispanic people in it in the exact location (the driveway) of the exact address specified by the caller.

Finally, in *Lyons*, there were no "indicia of reliability" as to the informant's tip. *Commonwealth* v. *Lyons*, 409 Mass. at 20. The caller only reported that a car with two white males headed for Bridgton, Maine, would be carrying narcotics. There was no reason for the police to infer that the caller's knowledge was based on personal observation.[1] Here, the police could reasonably have concluded that the caller's knowledge was based on personal observation since he or she reported observing "a handgun inside the motor vehicle and that it was wrapped in a towel." In the particular circumstances of this case, therefore, the anonymous informant's information bore adequate indicia of reliability to justify the police officers' stop of the defendant in reliance on the tip.

---

[1]The court distinguished *Lyons* from *Commonwealth* v. *Anderson*, 366 Mass. 394 (1974), where a bus passenger wrote a note informing the police that another passenger was carrying a gun. *Id.* at 395. Since the note was written by a passenger on the bus, it was reasonable for the police to infer that the informant's knowledge could be based on personal observation. *Id.* at 399. Hence, in *Anderson*, unlike *Lyons*, the tip bore indicia of reliability. *Id.*

This case is also distinguishable from *Commonwealth* v. *Couture*, 407 Mass. 178, cert. denied, 498 U.S. 951 (1990). In *Couture*, the caller simply reported that the defendant had a gun "protruding from his right rear pocket" and nothing more. *Id.* at 179. The defendant was not reported to be engaged in any other "suspicious" activity. The Supreme Judicial Court held that the initial stop was improper under the principles of *Terry* because "[t]he mere possession of a handgun was not sufficient to give rise to a reasonable suspicion." *Id.* at 183. Here, however, the caller reported more than that the defendant possessed a weapon. The caller also reported that he or she observed the gun wrapped in a towel. From that, the police could have inferred that concealment of the gun was possibly related to an illicit activity. Possession of a handgun, when coupled with suspicious concealment, is "sufficient to give rise to a reasonable suspicion", *id.*, for purposes of a *Terry* stop. We conclude that the investigatory stop was grounded on "reasonable suspicion," based upon "specific, articulable facts and reasonable inferences therefrom rather than a mere hunch." *Lyons*, 409 Mass. at 18-19 (citation omitted). Further, in light of our ruling that the initial stop was based on reasonable suspicion, we conclude that the handgun found in the consented-to search was properly admitted.

*Judgments affirmed.*

BROWN, J. (dissenting). The circumstances of this case are controlled in material respects by *Commonwealth* v. *Couture*, 407 Mass. 178, 183, cert. denied, 498 U.S. 951 (1990). Moreover, the "indicia of reliability" of this informer's tip were no better than that in *Commonwealth* v. *Lyons*, 409 Mass. 16, 20 (1990). A bad tip is bad, regardless of whether the contraband involved is a weapon or drugs. No such distinction has been insinuated into the Fourth Amendment to the United States Constitution.