COMMONWEALTH *vs.* ALEX ALVARADO, JR.

Essex. April 1, 1996. - July 23, 1996.

Present: LIACOS, C.J., WILKINS, LYNCH, O'CONNOR, & GREANEY, JJ.

*Search and Seizure;* Threshold police inquiry, Automobile. *Constitutional Law,* Search and seizure. *Firearms.*

An anonymous tip that a handgun was concealed inside a certain motor vehicle, with no showing of an imminent threat to public safety, did not, standing alone, support a reasonable suspicion that any occupant of the motor vehicle had committed, was committing, or was about to commit a crime. [269-271]

Information received by police from an anonymous informant regarding a concealed weapon in a motor vehicle was not shown to be sufficiently reliable, where independent police corroboration confirmed only innocent facts and demonstrated no threat to public safety, to warrant the police in making an investigatory stop. [271-274]

COMPLAINT received and sworn to in the Lawrence Division of the District Court Department on July 15, 1993.

A pretrial motion to suppress evidence was heard by *Ellen Flatley,* J., and the case was heard by *Michael T. Stella, Jr.,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Michael W. Seddon* (*John J. Barter* with him) for the defendant.

*Susanne Levsen,* Assistant District Attorney, for the Commonwealth.

WILKINS, J. We consider, on further appellate review, the question whether the defendant's motion to suppress a gun that the police seized from him should have been allowed. A District Court judge denied the suppression motion, which was based on art. 14 of the Massachusetts Declaration of Rights and the Fourth and Fourteenth Amendments to the United States Constitution. A divided Appeals Court agreed, affirming the defendant's conviction of carrying a firearm without having a license to do so (G. L. c. 269, § 10 [*a*] [1994

ed.]). *Commonwealth* v. *Alvarado,* 38 Mass. App. Ct. 650 (1995).[1]

The issue here is whether the police had a constitutionally adequate basis for stopping the vehicle that the defendant was driving. After the stop occurred, the defendant consented to a search of the vehicle. The police then found a .22 caliber handgun wrapped in a towel in the glove compartment. If the stop was proper, admission of evidence of the gun and of the defendant's statements to the police was correct.

The motion judge found that, on July 14, 1993, Methuen police officers went to 138 Jackson Street because of information received from an anonymous telephone caller. We set forth directly from the testimony of the police officer who testified at the hearing on the motion to suppress as to what the anonymous informant said:

> "We had a caller reported seeing a blue car in the driveway [at 138 Jackson Street] with several Hispanic subjects inside. The caller also stated that they [*sic*] observed a handgun inside the motor vehicle and that it was wrapped in a towel."

Police officers who arrived at 138 Jackson Street in three

---

[1] In a jury-waived trial, the judge also found the defendant guilty of violating G. L. c. 140, § 131C (1994 ed.), and placed the matter on file. That crime concerns the carrying of a firearm pursuant to a license in a vehicle without having the firearm under the defendant's direct control. Because there was no evidence that the defendant had a firearm license, the guilty finding was not warranted on that count of the complaint. The defendant does not, however, challenge this conviction on the ground of the insufficiency of the evidence.

The judge also found the defendant guilty of possession of a firearm without a firearm identification card (G. L. c. 269, § 10 [*h*] [1994 ed.]). Section 10 (*h*) states that a court shall not allow an attempt to prosecute a person for a violation of § 10 (*h*) where the unlicensed person was not "present in or on his residence or place of business." The gun was seized in a motor vehicle. There was no evidence that the motor vehicle was the defendant's "residence or place of business." Here the judge imposed a concurrent sentence of one year in a house of correction. Although the defendant did not seek a required finding of not guilty and does not on appeal challenge the guilty finding on the § 10 (*h*) count, it is apparent that the evidence did not warrant a guilty finding on that count. Because of the express requirement in § 10 (*h*), that the court not allow a prosecution in circumstances such as are before us, the guilty finding on the § 10 (*h*) count should be vacated without regard to our conclusion on the challenge to the motion to suppress.

vehicles saw a blue motor vehicle, with six people in it, backing out of the driveway.[2] A police officer parked his vehicle in the driveway blocking egress. He turned on the blue police lights on his vehicle. The police told the defendant, who was the driver, that they were responding to a report of a handgun. The defendant denied that he had a gun and invited the police to search the vehicle. The police found the gun, and the defendant was arrested.

The motion judge concluded that the anonymous caller had described "the precise location of a car and its occupants and of suspicious activity (i.e. the hiding of a firearm in a towel)." She concluded that the police "had reasonable and articulable facts, not just a hunch, that illegal activity . . . was taking place." She suggested the possibility of "carrying a concealed weapon" (which, we note, is not a crime) "or carrying an unlicensed firearm" (which is a crime). She ruled that the police's threshold inquiry was proper as a *Terry* stop.[3]

The investigatory stop was justified if the Commonwealth proved that the police had a reasonable suspicion, based on specific, articulable facts and reasonable inferences therefrom, that an occupant of the blue motor vehicle had committed, was committing, or was about to commit a crime. *Commonwealth* v. *Alvarado, supra* at 652, citing *Commonwealth* v. *Lyons*, 409 Mass. 16, 18-19 (1990), and *Commonwealth* v. *Wren*, 391 Mass. 705, 707 (1984). See *United States* v. *Hensley*, 469 U.S. 221, 229 (1985); *United States* v. *Cortez*, 449 U.S. 411, 417 (1981). In this Commonwealth, under art. 14, the legality of the stop, that is, the existence of reasonable suspicion, is not determined by the imprecise Federal totality of the circumstances standard but rather by application of the principles stated in determining the existence of probable cause in *Commonwealth* v. *Upton*, 394 Mass. 363, 373-375 (1985) (reliability of informant and basis of his or her knowledge). *Commonwealth* v. *Lyons, supra.* "Because the standard

[2]The motion judge's findings do not incorporate all the testimony of the police officer who testified at the hearing on the motion to suppress. The Appeals Court opinion, although representing that it was summarizing the judge's findings of fact (*Commonwealth* v. *Alvarado*, 38 Mass. App. Ct. 650, 651 [1995]), includes facts not found by the judge. We also refer to uncontroverted testimony of the police officer because we infer that the motion judge accepted it in its entirety.

[3]*Terry* v. *Ohio*, 392 U.S. 1 (1968).

is reasonable suspicion rather than probable cause, a less rigorous showing in each of these areas is permissible." *Id.* at 19. See *Commonwealth* v. *Willis*, 415 Mass. 814, 819 (1993). We decide this case under art. 14. As would a Federal appellate court, we review the historical facts to determine on our own whether an objectively reasonable police officer would have been warranted in having a reasonable suspicion of criminal activity. See *Ornelas* v. *United States*, 116 S. Ct. 1657 (1996); *Commonwealth* v. *Santos*, 402 Mass. 775, 780 (1988).

We shall initially assume, for the purposes of analysis, that the reliability of the informant and the basis for the informant's knowledge have been established at the level that is required by art. 14. We shall return to that question later, but first we consider whether the police had any information that justified a reasonable suspicion that the defendant had committed, was committing, or was about to commit a crime. The question is whether the presence of a handgun wrapped in a towel provides any reasonable basis for suspecting the occurrence of past, present, or future criminal activity.

Carrying a gun is not a crime. Carrying a firearm without a license (or other authorization) is. G. L. c. 269, § 10 (*a*). This court held in *Commonwealth* v. *Couture*, 407 Mass. 178, 183, cert. denied, 498 U.S. 951 (1990), that, under the Fourth Amendment, "[t]he mere possession of a handgun was not sufficient to give rise to a reasonable suspicion that the defendant was illegally carrying that gun." See *Commonwealth* v. *Toole*, 389 Mass. 159, 163-164 (1983) ("carrying a .45 caliber revolver is not necessarily a crime" and thus there was no probable cause to search vehicle). The dissenting Appeals Court Justice in this case concluded that this case was controlled in material respects by our *Couture* opinion. See *Commonwealth* v. *Alvarado, supra* at 654 (Brown, J., dissenting).[4]

The Appeals Court distinguished the *Couture* case on the ground that here the gun was wrapped in a towel, whereas in the *Couture* case the defendant had had a gun protruding from his right rear pocket. *Commonwealth* v. *Alvarado, supra* at 654. The Appeals Court concluded that the concealment

---

[4]This view is also supported by the holding in *Commonwealth* v. *Fraser*, 410 Mass. 541, 542, 546 (1991), that "a radio call about 'a man with a gun inside a brown Toyota at 35 High Street in Dorchester,' which is located in a 'high crime area' " did not alone give the police "the reasonable suspicion required to conduct a protective frisk."

here was suspicious and that "the police could have inferred that concealment of the gun was possibly related to an illicit activity." *Id.*

Under the rule for which the Commonwealth contends, and which the Appeals Court opinion adopted, a police officer who receives reliable information that a person is carrying a concealed weapon is warranted, without more, in having reasonable suspicion that the person has been, is, or will be engaged in criminal activity and thus is warranted in making an investigatory stop. Carrying a weapon concealed in a towel, a bag, or a knapsack, for example, however, is not a crime in this State. The suspected crime in such circumstances can only be the carrying of an unlicensed weapon, because carrying a concealed weapon is not, standing alone, an indication that criminal conduct has occurred or is contemplated.

Some courts have been willing to accept the view that the number of handguns in society greatly exceeds the number of licensed handguns and, therefore, "the odds are" (the reasonable suspicion is) that a person carrying a weapon is committing a crime. See *United States* v. *Bold,* 19 F.3d 99, 104 (2d Cir. 1994) ("the statistical likelihood that the gun was illegal," along with other circumstances, supports reasonable suspicion). Other decisions seem to relax the standard when a gun tip, as opposed to a drug tip, is involved, because of the hazards created by guns. See *United States* v. *Clipper,* 973 F.2d 944, 950-951 (D.C. Cir. 1992), cert. denied, 506 U.S. 1070 (1993); *State* v. *Pulley,* 863 S.W.2d 29, 33 (Tenn. 1993), and cases cited.

We have nothing here to justify a reasonable suspicion of criminal conduct beyond a report of a concealed weapon. There is no suspicious conduct except as the concealment itself may generate suspicion. The Massachusetts cases on which the Appeals Court relied involving a report of imminent danger, as distinguished from a tip involving drugs, do not support an investigative stop on the facts of this case. See *Commonwealth* v. *Alvarado, supra* at 653.[5] There is no showing of imminent danger in this case.

---

[5]In *Commonwealth* v. *Anderson,* 366 Mass. 394, 395 (1974), an anonymous informant gave information that the defendant was carrying narcotics and was armed and dangerous. The informant's information about the defendant was significantly corroborated by police observation. *Id.* This court upheld a search for a weapon that was conducted when the police stopped

Because the tip did not disclose any imminent threat to public safety, we are reluctant to relax our established rule that the report of the carrying of a firearm is not, standing alone, a basis for having a reasonable suspicion of criminal activity. We are especially reluctant to abandon our rule where, as we shall next demonstrate, the reliability of the tip was not sufficiently established so as to justify reliance on it.[6]

The information from the anonymous informant would warrant a reasonable suspicion that the defendant had committed, was committing, or was going to commit a crime only if the informant's tip were shown to be reliable. Reliability of an anonymous tip must be based on the informant's reliability and on a demonstration of the basis of the informant's knowledge. *Commonwealth* v. *Lyons*, 409 Mass. 16, 19 (1990). The basis of the informant's knowledge appeared within the tip itself, in which the caller stated that he or she had seen several "Hispanic subjects" in a blue car in the driveway at 138 Jackson Street and had seen a handgun wrapped in a towel in the vehicle. The message suggested that the caller had just seen the blue car, its occupants, the towel, and the handgun. From this, the basis of the informant's knowledge, recent first-hand observation, might be inferred. But see *Commonwealth* v. *Lyons, supra* at 17, 20-21 (basis of knowledge not shown by telephone tip that drugs were in specified vehicle).

The more difficult question is whether the police had an adequate basis for concluding that the informant was reliable. Because the informant was anonymous, there was no basis for relying on previous conduct of the informant. The informant's reliability could be established by independent police corrobo-

the defendant. *Id.* at 396, 401. We did so on the ground that the police might fear for their safety. *Id.* at 400-401. The case now before the court presents no basis for concluding that the police were concerned about their safety and, therefore, conducted the search for their protection.

The three Appeals Court opinions on which the Appeals Court relied (*Commonwealth* v. *Alvarado, supra* at 653) to elevate the right to make a preliminary inquiry concerning a weapon above the right to inquire about a controlled substance, all involved a reasonable and pressing concern for the safety of others created by the dangerous conduct of the defendants. No such circumstance exists in this case.

[6]In our recent opinion in *Commonwealth* v. *Stoute*, 422 Mass. 782 (1996), the police were informed that a young man on a bicycle had a gun. The defendant did not argue that in the circumstances the police could not reasonably infer criminal conduct from a report of the possession of a gun.

ration of the information disclosed. *Id.* at 19. The police confirmed that there was a blue vehicle in the driveway at 138 Jackson Street. The police also largely confirmed the informant's statement that there were "several Hispanic subjects inside" the blue vehicle by their discovery of six "Hispanics or black subjects" in the blue vehicle. The question is whether police confirmation of these innocent facts permits a reasonable conclusion that the informant was reliable.

These facts are less persuasive than the facts in *Commonwealth* v. *Lyons, supra,* in which this court held that information in an informant's tip was not sufficiently corroborated to warrant an investigatory stop. See *id.* at 20, 22. In the *Lyons* case, the State police received an anonymous telephone call stating that two white males had just purchased narcotics in Chelsea and would be heading for Bridgton, Maine, in a silver Hyundai automobile with a Maine registration 440-44T. *Id.* at 17. Less than one hour later, a State trooper saw the vehicle, occupied by two white males, and stopped it. *Id.* He saw in the vehicle what appeared to be cocaine and drug-related items. *Id.* This court held that the evidence seized should be suppressed because neither the basis of the informant's knowledge nor his reliability were established by the tip and such details as were corroborated by the police. *Id.* at 20. The police confirmed the detailed description of the vehicle, the direction in which it was headed, and the race and sex of its occupants. The court concluded that: "the informant's reliability was only slightly enhanced by this corroboration because the police verified no predictive details that were not easily obtainable by an uninformed bystander. The corroboration went only to obvious details, not nonobvious details. Significantly, unlike [*Commonwealth* v. *Anderson,* 366 Mass. 394 (1974)], these defendants displayed no suspicious behavior that might have heightened police concern. Anyone can telephone the police for any reason. Thus, some specificity of nonobvious facts which show familiarity with the suspect or specific facts which predict behavior is central to reasonable suspicion. By using objective criteria, the risk of arbitrary action and abusive practices by police is diminished." (Footnote omitted). *Id.* at 21-22.

The dissenting Justice in the Appeals Court concluded that

"the 'indicia of reliability' of this informer's tip were no better than" those in the *Lyons* case. *Commonwealth* v. *Alvarado*, 38 Mass. App. Ct. 650, 654 (Brown, J., dissenting). He is correct. In the *Lyons* case, there was confirmation of predicted future behavior (of which there is none in the case before us), but the court nevertheless held that the reliability of the informant was not established. *Commonwealth* v. *Lyons, supra* at 21-22 & n.5. Although corroboration of predicted future behavior is not essential to a determination of reasonable suspicion based on an anonymous tip (see *Commonwealth* v. *Lyons, supra* at 21; *United States* v. *Clipper, supra* at 949), corroboration of the presence of a reported blue motor vehicle occupied by several Hispanic persons in a specific driveway is not alone sufficient to justify the reliability of an anonymous informant and thus to warrant reasonable suspicion of criminal conduct. Cf. *Alabama* v. *White*, 496 U.S. 325, 332 (1990) ("The fact that the officers found a car precisely matching the caller's description in front of the 235 building is an example of" easily obtained facts. Caller's ability to predict future behavior is what is important).

The Appeals Court distinguished the *Lyons* case on three grounds. See *Commonwealth* v. *Alvarado, supra* at 653. The fact that in this case there was a report of a gun and in the *Lyons* case there was a report of illegal drugs is not a distinction that favors a determination of reasonable suspicion here. In the *Lyons* case, the tip reported undoubted criminal conduct. The tip here did not. The Appeals Court's conclusion that the reference to a gun presented "[t]he element of imminent danger" is not warranted on the facts. See *id.* Contrast *Commonwealth* v. *Willis*, 415 Mass. 814, 817 (1993). There was no suggestion of threats of violence, acts of violence, impending criminal activity, or concern for public safety. Our cases have not yet declared reasonable suspicion warranted simply on a report of gun possession just because this country has problems with the unlawful use of guns.

The Appeals Court thought that the closer connection in time between the tip and the stop in this case (ten minutes) than in the *Lyons* case (forty-five minutes) was a significant difference favoring the finding of reasonable suspicion in this case. *Commonwealth* v. *Alvarado, supra*. We see no meaningful distinction in the time difference.

The Appeals Court also concluded, as we have, that there

is a basis for ruling that the caller's knowledge was founded on first-hand observation of the vehicle, the men, the towel, and the gun. *Id.* However, the Appeals Court did not analyze or even advert to the fact that the reliability of the informant, a necessary condition, was not demonstrated in the *Lyons* case where the facts were more favorable to such a finding than they are in the case before us.

We conclude that reasonable suspicion justifying an investigatory stop cannot be founded on an anonymous tip concerning a concealed weapon made by a person whose reliability is not established where there is no indication (in the tip or otherwise) of a threat to anyone's physical well being or of the commission of a crime (other than the possibility of the possession of an unlicensed weapon). The defendant's convictions on all three counts are reversed, the order denying the defendant's motion to suppress evidence shall be vacated, and an order shall be entered allowing the motion to suppress.

*So ordered.*