COMMONWEALTH *vs.* JOSE GOMES. November 17, 2010. *Firearms. Practice, Criminal,* Motion to suppress. *Search and Seizure,* Protective frisk, Reasonable suspicion. *Constitutional Law,* Search and seizure, Stop and frisk, Reasonable suspicion.

The defendant was convicted by a jury in the District Court of unlawful firearm and ammunition possession, after having moved unsuccessfully to suppress certain evidence. The Appeals Court concluded that the defendant's motion was wrongly denied and reversed the convictions. See *Commonwealth* v. *Gomes*, 75 Mass. App. Ct. 791 (2009). We granted the Commonwealth's application for further appellate review. We reverse the defendant's convictions.

*Background.* At the motion hearing, three police officers testified. We supplement the motion judge's findings with uncontested facts drawn from the testimony of Officer Brian Oliveira, whose testimony we infer the judge credited in its entirety. The same cannot be said of the testimony of the other officers, as we shall explain. See *Commonwealth* v. *Alvarado*, 423 Mass. 266, 268 n.2 (1996).

On May 24, 2006, at approximately 8 A.M., a dispatch, prompted by a 911

telephone call, was made over the New Bedford police department radio system. The dispatch reported a man holding a gun in the air on Hazard Street.[1] The man was described as a black male wearing a gray shirt and yellow pants standing outside a green Honda automobile.[2] Officer Oliveira, who was traveling alone in a marked cruiser, was the first to arrive in the area. He arrived approximately three minutes after hearing the dispatch, and saw a green Honda parked on Hazard Street. He described the street as an area of gang activity from which the police had received "a lot of calls." He got out of his cruiser and ordered the driver, the defendant, out of the automobile. Officer Oliveira was wearing a police uniform and had a gun with him, but he did not draw his gun at any time. A woman was sitting in the front passenger seat. The defendant got out of the automobile. He was a black male wearing a gray shirt and (according to the judge) green pants.[3] The officer conducted a patfrisk of the defendant and asked him whether he had any weapons. The defendant stated that a weapon was in the automobile. Another officer who arrived at the scene discovered a gun under the front passenger seat.

*Discussion.* The defendant moved to suppress the physical evidence under both the Fourth Amendment to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights.[4] In denying the motion, the judge concluded that the information provided by the dispatch "was not simply that an individual was carrying a firearm, but rather that he was standing on the street, pointing the gun in the air. Such behavior suggested a potential threat to public safety." We disagree that the evidence justified the stop and frisk of the defendant.

There is no "firearm exception" to the general rule barring investigatory stops and frisks on the sole basis of an anonymous tip. See *Florida* v. *J.L.*, 529 U.S. 266, 272-274 (2000). This case involves such a tip, as there was no evidence about the 911 caller's identity or identifiability. See *Commonwealth* v. *Gomes*, 75 Mass. App. Ct. 791, 794-795 (2009), and cases cited.[5] See also *Florida* v. *J.L.*, *supra* at 270-271. Moreover, there was no evidence of the

---

[1]The dispatch was described variously by the officers as a report of a man "with a gun" and "holding a gun in the air" (Officer Brian Oliveira); of "someone with a firearm, loading a firearm" (Officer Mark Giammalvo); and of a man "waving a gun around" (Officer Joshua Gerard). The judge acknowledged the variations in the officers' testimony but discredited the testimony that the man was loading or waving a gun; she found only that the man was holding a gun in the air.

[2]The judge discredited Officers Giammalvo's and Gerard's testimony that the dispatcher described the man's pants as brown. She also discredited Officer Gerard's testimony that the dispatcher described the man's shirt as green.

[3]The judge's finding about the color of the defendant's pants appears to be error, as there was no evidence about the actual color of the defendant's pants, although there was conflicting testimony about how the dispatcher described the pants. See note 2, *supra*.

[4]We agree with the Commonwealth's concession that our decision in *Commonwealth* v. *Mubdi*, 456 Mass. 385, 388-391 (2010), forecloses its claim that the defendant failed to comply with the requirements of Mass. R. Crim. P. 13 (a) (2), as appearing in 442 Mass. 1516 (2004), where the Commonwealth failed in the trial court to raise any objection to the sufficiency of the defendant's motion to suppress or his accompanying affidavit.

[5]The Commonwealth's failure to introduce a recording of the 911 telephone call at the suppression hearing hampered the ability of the parties and the judge properly to address the caller's reliability. Compare *Commonwealth* v. *Mubdi*, 456 Mass. 385, 396-397 (2010)

caller's basis of knowledge or veracity; no predictions by the caller of facts later confirmed by the police, to show the caller had inside knowledge; and no evidence of corroboration by the police of more than innocent details, i.e., the defendant's presence near a green Honda, his race, and his gray shirt. See *Florida* v. *J.L.*, *supra* at 270-272. Thus, there was no basis to conclude that the 911 caller's report of possibly criminal behavior was reliable. See *id.* at 272 (reasonable suspicion requires that tip be reliable "in its assertion of illegality, not just in its tendency to identify a determinate person"). See also *Commonwealth* v. *Gomes*, *supra* at 795-796, and cases cited.

The United States Supreme Court in *Florida* v. *J.L.*, *supra* at 273, recognized that there may be "circumstances under which the danger alleged in an anonymous tip might be so great as to justify a search even without a showing of reliability[, such as] a report of a person carrying a bomb." Similarly, we have recognized that, under art. 14, although an anonymous tip about "a concealed weapon" cannot alone create reasonable suspicion to justify an investigatory stop, such suspicion may arise where there is an "indication (in the tip or otherwise) of a threat to [someone's] physical well being," i.e., an "imminent threat to public safety." *Commonwealth* v. *Alvarado*, *supra* at 271, 274. The facts found by the motion judge in this case, however, do not show great or imminent danger. To be sure, this case concerned a report of a man holding a gun in the air rather than merely carrying a gun, as occurred in *Florida* v. *J.L.*, *supra*, and *Commonwealth* v. *Alvarado*, *supra*. But that distinction alone does not transform this case into one of great or imminent danger. There was no evidence that the gun had been fired, pointed at another person, or otherwise handled in a way that posed a threat to someone, nor was there evidence that the defendant was a dangerous person. Moreover, when the officer approached the defendant, the defendant sat in his automobile and made no furtive, evasive, or otherwise suspicious movements, nor did he make any statements to arouse suspicion.[6] Although Officer Oliveira responded to the dispatch more quickly than did the officer in *J.L.* (three minutes here versus six minutes in *J.L.*, see *Florida* v. *J.L.*, *supra* at 268), that difference is not meaningful.[7] See *Commonwealth* v. *Alvarado*, *supra* at 273. Nor is the fact that the area was known for "gang activity." See *Commonwealth* v. *Mubdi*, 456 Mass. 385, 398 (2010), and cases cited. By stopping and frisking the defendant solely based on the anonymous tip relayed in the dispatch, the police violated the defendant's rights under the Fourth Amendment and art. 14, and the evidence should have been suppressed. Compare *Commonwealth* v. *Barros*, 435 Mass. 171, 176-178 (2001), with *Commonwealth* v. *Mercado*, 422 Mass. 367, 369-371 (1996).

---

(where recording of 911 call not played at suppression hearing, court's assessment of caller's basis of knowledge and veracity was limited), with *Commonwealth* v. *Depina*, 456 Mass. 238, 243-245 (2010) (playing of 911 call allowed court to determine caller's basis of knowledge and that her statements were reliable as excited utterances). The Commonwealth would be well advised in the future to make reasonable efforts to introduce such evidence.

[6]An officer is free to consider a person's evasive or furtive actions, as well as gestures that suggest reaching for a weapon, in deciding whether to conduct a stop and frisk. See, e.g., *Commonwealth* v. *DePeiza*, 449 Mass. 367, 372 (2007), and cases cited; *Commonwealth* v. *Wren*, 391 Mass. 705, 708 n.2 (1984); *Commonwealth* v. *Fisher*, 54 Mass. App. Ct. 41, 44-46 (2002), and cases cited.

[7]There was no evidence here or in *Florida* v. *J.L.*, 529 U.S. 266, 268 (2000), regarding how much time elapsed between the anonymous call and the dispatch.

*Conclusion.* The order denying the defendant's motion to suppress is vacated, and an order shall enter allowing that motion. The judgments of conviction are reversed.

*So ordered.*

*Garrett R. Fregault,* Assistant District Attorney (*Steven E. Gagne,* Assistant District Attorney, with him) for the Commonwealth.

*Christine Kelley Tramontana* for the defendant.