SERTYL, COMMONWEALTH vs., 101 Mass. App. Ct. 836

 
 COMMONWEALTH vs. PIERRE A. SERTYL.

101 Mass. App. Ct. 836
 September 6, 2022 - October 27, 2022

Court Below: District Court, Malden Division
Present: Sullivan, Blake, & Grant, JJ.

 

No. 21-P-1149.

Controlled Substances. Firearms. Constitutional Law, Search and seizure, Reasonable suspicion. Search and Seizure, Threshold police inquiry, Reasonable suspicion, Exigent circumstances, Fruits of illegal search. Threshold Police Inquiry. Practice, Criminal, Motion to suppress.

A District Court judge erred in denying a criminal defendant's motion to suppress evidence seized by police during an investigatory stop and warrantless search of his backpack and parked motor vehicle, where an uncorroborated (and therefore unreliable) anonymous 911 call stating that three Black males wearing hooded sweatshirts and backpacks had walked into a building displaying firearms did not provide reasonable suspicion that the defendant, whose backpack was squarely on his back, had a gun, was reaching for a gun, or was engaging in unlawful activity, or that he otherwise posed a danger to the officers; and where there was no suggestion in the record that the defendant's companion (who had his hand in his own backpack) was somehow attempting to create a diversion or otherwise acting on behalf of the defendant in a manner that created reasonable suspicion or implicated officer safety. [838-844]

Complaint received and sworn to in the Malden Division of the District Court Department on October 11, 2017.

 A pretrial motion to suppress evidence was heard by Benjamin C. Barnes, J., and a conditional plea of guilty was accepted by Asha Z. White, J.

 Alison R. Bancroft for the defendant.

 Timothy Ferriter, Assistant District Attorney, for the Commonwealth.

 SULLIVAN, J. The defendant, Pierre A. Sertyl, entered a conditional plea of guilty to charges of possession with intent to distribute a class B drug in violation of G. L. c. 94C, § 32A (a), and carrying a firearm without a license in violation of G. L. c. 269, § 10 (a). [Note 1] On appeal, the defendant contends that the judge erred in denying his motion to suppress because (1) the police did 

 Page 837 

not have reasonable suspicion to stop the defendant; (2) the police lacked reasonable suspicion or exigent circumstances to search his backpack; and (3) the police did not have probable cause or exigent circumstances to search his car. We conclude that the motion should have been allowed, because the uncorroborated anonymous tip on which the police relied did not provide reasonable suspicion to conduct the stop. Accordingly, we reverse the order denying the motion to suppress.

 Background. We summarize the facts found by the motion judge following an evidentiary hearing, supplemented with the uncontroverted evidence from the record that is in accordance with his ruling. See Commonwealth v. Garner, 490 Mass. 90, 91, 93-94 (2022). The judge found that on Tuesday, October 10, 2017, at approximately 5 P.M., Officers McCabe and Vieira [Note 2] responded to an anonymous 911 call reporting that "three [B]lack males, wearing hooded sweatshirts and backpacks, had walked into a music recording studio located at 69 Norman St[reet] in the city of Everett, displaying firearms." [Note 3] Norman Street is an industrial area consisting of five or six metal factories, mechanics' shops, automobile body shops, and small units rented out as artists' studios and music or recording studios. The police previously had received reports of criminal activity in that area. [Note 4]

 When he and Officer Vieira arrived at 69 Norman Street, Officer McCabe parked their cruiser on a street adjacent to the scene. There was no evidence as to how far away from 69 Norman Street the responding officers were when they received the call, or how long it took them to get there. As backup officers arrived, Officer McCabe saw a group of five Black men, some of whom wore "hoodies" and backpacks, "walking away from the area of the main entrance to 69 Norman Street." There was no evidence as to how far away from that entrance the men were, or how much time had elapsed since the 911 call.

 Page 838 

 Officers McCabe and Vieira approached the men and asked if the men would "mind" speaking to them. The group stopped without objection. At the same time, Officer McCabe noticed another group of individuals located approximately thirty yards away. Officers McCabe and Vieira "passed off" the first group of five men to Officers Williamson, Sabella, [Note 5] and Gaff, who had arrived at the scene. Officer Sabella held a "long arm . . . M4" rifle with a large capacity feeding device to "cover" Officer Williamson. The five men were cooperative and calm, responded to requests, and made no effort to evade the police.

 When Officer Williamson approached the first group of five men, one of the men (other than the defendant) had one hand in his backpack. Officer Williamson ordered him to remove his hand. The officer then seized that backpack. The defendant stood with his backpack on his back with an arm through each strap. The officer "took possession of" the defendant's backpack as well.

 Officer Williamson lifted the defendant's backpack, which was heavy. He did not feel the outside of the backpack. Instead, he unzipped it and saw a firearm. He then alerted the other officers, and both men were handcuffed. Officer Gaff searched the defendant's backpack again and found small bags containing what appeared to be narcotics. Officers searched the defendant and took his car keys. Another officer performed a search of a parked car using the keys found on the defendant and seized an additional bag thought to contain drugs. [Note 6]

 The judge concluded that police had reasonable suspicion to stop the group of five men, that the officers reasonably suspected that the men were armed, and that the officers were permitted to take and search the defendant's backpack for this reason as well as officer safety. The judge further concluded that exigent circumstances existed to search the car, which was parked on a public street.

 Discussion. "In reviewing a ruling on a motion to suppress evidence, we accept the judge's subsidiary findings of fact absent clear error and leave to the judge the responsibility of determining 

 Page 839 

the weight and credibility to be given . . . testimony presented at the motion hearing. However, [w]e review independently the application of constitutional principles to the facts found. The Commonwealth bears the burden of demonstrating that the actions of the police officers were within constitutional limits" (quotations and citations omitted). Commonwealth v. Meneus, 476 Mass. 231, 234 (2017).

 Our first task is to determine when the stop began. We consider "whether an officer has, through words or conduct, objectively communicated that the officer would use his or her police power to coerce that person to stay." Commonwealth v. Matta, 483 Mass. 357, 362 (2019). Both the Commonwealth and the defendant agree that the initial request by Officers McCabe and Vieira to talk to the defendant and his companions did not constitute a stop, as do we. See id. at 360.

 The defendant asserts that a consensual encounter was converted to a stop in the constitutional sense when multiple police officers appeared on the scene, including an officer who held a rifle and "covered" the other officers. The Commonwealth contends that the stop began when an officer took the backpacks. The judge ruled that the police had reasonable suspicion to stop and question the men, suggesting that, at the least, he considered the presence of multiple officers, one of them holding a rifle, to mean that the men were not free to leave. [Note 7] See Matta, 483 Mass. at 365 (stop may occur where police "otherwise intimidated the defendant"); Commonwealth v. Willis, 415 Mass. 814, 820 (1993) ("the officers used force to stop the defendant. They outnumbered the defendant, and approached him with their guns drawn [but not pointed at him]"). Either way, once the backpacks were taken, the officers had engaged in a show of force that prevented the defendant from leaving.

 We therefore turn to "whether the stop was based on an officer's reasonable suspicion that the person was committing, had committed, or was about to commit a crime. That suspicion must be grounded in specific, articulable facts and reasonable inferences 

 Page 840 

[drawn] therefrom rather than on a hunch" (quotations and citation omitted). Commonwealth v. Warren, 475 Mass. 530, 534 (2016). "The essence of the reasonable suspicion inquiry is whether the police have an individualized suspicion that the person seized is the perpetrator of the suspected crime." Id.

 In this case, the reasonable suspicion calculus turns on the reliability of the anonymous tip. "[I]f the police conduct an investigatory stop based on an informant's tip, our evaluation of the tip's indicia of reliability will be focused on the informant's reliability and his or her basis of knowledge." Commonwealth v. Lyons, 409 Mass. 16, 19 (1990). See Spinelli v. United States, 393 U.S. 410 (1969); Aguilar v. Texas, 378 U.S. 108 (1964). Here, there is no evidence of the anonymous caller's basis of knowledge or reliability. See Commonwealth v. Gomes, 458 Mass. 1017, 1018-1019 (2010) (anonymous tip that man was holding gun while standing on particular street lacked basis of knowledge and was not reliable). Contrast Commonwealth v. Lopes, 455 Mass. 147, 156 (2009) (tip involving weapon reliable "[b]ecause the basis of [the 911 caller's] knowledge was his own personal observation, he gave his true name to the police, and he was a cousin of the victim").

 "Independent police corroboration may make up for deficiencies in one or both of these factors." Lyons, 409 Mass. at 19. [Note 8] There is, however, little or no corroboration in this case that a crime was committed, or was about to be committed, or that the defendant was the person who had committed, was committing, or was about to commit a crime.

 The dispatcher's report that three Black men had walked into a music studio "displaying" guns, in the absence of the 911 recording or other information gleaned by the police, was too vague to establish reasonable suspicion that a crime had been, was being, or was about to be committed. A tip must be reliable "in its assertion of illegality, not just in its tendency to identify a determinate person." Gomes, 458 Mass. at 1019, quoting Florida v. J.L., 529 U.S. 266, 272 (2000). The Commonwealth contends that the anonymous tip regarding a gun in a public place created an exigency that warranted the stop, but our appellate courts have 

 Page 841 

rejected this assertion as a blanket proposition when its sole basis is an uncorroborated (and therefore unreliable) anonymous tip. See, e.g., Meneus, 476 Mass. at 239 ("we have not gone so far as to carve out a public safety exception based on this factor"); Gomes, supra at 1018 (no basis for stop where anonymous tip reported man holding gun in air in street; "[t]here is no 'firearm exception' to the general rule barring investigatory stops and frisks on the sole basis of an anonymous tip"); Commonwealth v. Barros, 435 Mass. 171, 172, 178 (2001) (no reasonable suspicion based on anonymous tip that man showed gun to others at intersection); Commonwealth v. DeJesus, 72 Mass. App. Ct. 117, 118-119 (2008) (no reasonable suspicion where anonymous tipster stated he looked out window and saw people in van with handguns).

 These cases are founded on the principle that "[c]arrying a gun is not a crime. Carrying a firearm without a license (or other authorization) is." Commonwealth v. Alvarado, 423 Mass. 266, 269 (1996). See Matta, 483 Mass. at 366 ("carrying a concealed firearm, by itself, is not a crime"); Commonwealth v. Couture, 407 Mass. 178, 183, cert. denied, 498 U.S. 951 (1990) ("The mere possession of a handgun was not sufficient to give rise to a reasonable suspicion that the defendant was illegally carrying that gun . . ."). As a result, "[a]n anonymous tip that someone is carrying a gun does not, without more, constitute reasonable suspicion to conduct a stop and frisk of that individual." Barros, 435 Mass. at 177.

 This is not to say that a reliable report of a gun in a public place could not provide reasonable suspicion of past, present, or future criminal conduct in other circumstances. See Lopes, 455 Mass. at 156-157. In this case, however, a conscientious judge was faced with a barren record. The prosecution did not offer the 911 recording, and it is the caller's words, not the dispatcher's comments, that are the proper basis on which to evaluate reasonable suspicion. See Commonwealth v. Edwards, 476 Mass. 341, 343 n.3 (2017). Unlike Edwards, where the caller was deemed reliable, [Note 9] the caller here was not identified, the prosecutor did not put the 911 recording in evidence, and little else was reported. There 

 Page 842 

was no other form of corroboration, compare id. at 342-344, and there were no reports of threats or shots fired, or that the gun had been pointed at anyone, factors that would weigh in favor of reasonable suspicion. See Gomes, 458 Mass. at 1019, and cases cited. See also Commonwealth v. Evelyn, 485 Mass. 691, 704-705 (2020) (defendant stopped by police after shooting was reported); Alvarado, 423 Mass. at 270 (report of concealed weapon; distinguishing cases involving imminent danger).

 Even though the anonymous tip fell short, on its own, of describing criminal conduct, the police were entitled to approach the defendant and his companions and speak to them. See Matta, 483 Mass. at 365-366. However, as events unfolded, nothing else occurred to suggest that a crime had been committed, or was about to be committed, by the defendant or his companions. This lack of corroboration undercut any claim that the stop was based on reasonable suspicion that a crime was afoot or gave rise to concerns for officer safety. We summarize the salient points below.

 The dispatcher reported that the caller saw three men. The officers observed five. The description was generic and could have fit any number of people leaving a location populated by several businesses at 5 P.M. on a weekday. See Meneus, 476 Mass. at 236-237, and cases cited; Commonwealth v. Cheek, 413 Mass. 492, 496 (1992); Commonwealth v. Paris, 97 Mass. App. Ct. 785, 789 (2020). There was no evidence that the men were known to the police or had a criminal record. Contrast Commonwealth v. Sweeting-Bailey, 488 Mass. 741, 743 (2021), cert. denied, 91 U.S.L.W. 3066 (2022).

 In the absence of any evidence as to how far away the officers were when they received the report, how long it took them to arrive, and how long after the 911 call the defendant and his companions were seen "walking away from the area of the main entrance to 69 Norman Street," the police observations were insufficient to corroborate the anonymous tip, or to otherwise establish a reasonable suspicion that the defendant was armed or involved in criminal activity. "Thus, although temporal and geographic proximity . . . can contribute to the reasonableness of a stop, . . . it was not particularly meaningful here." Commonwealth v. Jones, 95 Mass. App. Ct. 641, 647 (2019). Compare Evelyn, 485 Mass. at 704-705.

 Nor, on this record, did the reference to the area as a "high 

 Page 843 

crime area" add to the calculus in a material way. [Note 10] "The characterization of an area as high crime cannot justify the diminution of the civil rights of its occupants. . . . We are skeptical that . . . previous crimes, without additional details, demonstrate a direct connection with the defendant or [the 911 call] at issue" (quotation omitted). Evelyn, 485 Mass. at 709. See Commonwealth v. Jones-Pannell, 472 Mass. 429, 435 (2015) ("That one or more 'crimes' occurred at some point in the past somewhere on a particular street does not necessarily render the entire street a 'high crime area,' either at that time or in perpetuity"). There was evidence that firearms had been fired at this location the previous winter, see note 4, supra, but that alone is insufficient to forge the key connection that, months later, a report of the "display" of "guns" gave rise to reasonable suspicion to stop this defendant. See Evelyn, supra (declining to rely on general description of criminal activity in absence of "dates, precise locations, and alleged perpetrators . . . demonstrat[ing] a 'direct connection' with the defendant or the shooting at issue"). In the absence of other corroborating circumstances, this factor alone cannot play a decisive role in transforming an anonymous tip into a reliable one. Cf. Meneus, 476 Mass. at 238, quoting Commonwealth v. Grandison, 433 Mass. 135, 139 (2001) ("Although the characterization of a particular neighborhood as a 'high crime' area has been recognized as a factor in the reasonable suspicion analysis, . . . we have been clear that '[j]ust being in a high crime area is not enough to justify a stop'").

 Even if we assume that the stop did not occur until the backpacks were seized, the result is the same. That the officers saw the defendant's companion with his hand in his backpack did not give rise to reasonable suspicion that this defendant had an unlawful firearm and was therefore "armed and dangerous." Sweeting-Bailey, 488 Mass. at 744. As discussed supra, the uncorroborated (and therefore unreliable) anonymous 911 call did not 

 Page 844 

provide reasonable suspicion that this defendant, whose backpack was squarely on his back, had a gun, was reaching for a gun, or was engaging in unlawful activity, or that he otherwise posed a danger to the officers. Nor is there any suggestion in this record that the defendant's companion was somehow attempting to create a diversion or otherwise acting on behalf of the defendant in a manner which created reasonable suspicion or implicated officer safety. Contrast id. at 747-748. As in Gomes, 458 Mass. at 1019, there was "no evidence of corroboration by the police of more than innocent details" and "[t]hus . . . no basis to conclude that the 911 caller's report of possibly criminal behavior was reliable."

 There being no reasonable suspicion for the stop, the evidence seized from the backpack and the car should have been suppressed as fruits of the poisonous tree. [Note 11] See Jones, 95 Mass. App. Ct. at 648, citing Wong Sun v. United States, 371 U.S. 471, 487-488 (1963). Accordingly, the order denying the motion to suppress is reversed, and the matter is remanded for further proceedings.

So ordered.

FOOTNOTES
[Note 1] A charge of carrying a loaded firearm without a license, G. L. c. 269, § 10 (n), was dismissed for lack of prosecution. The conditional plea preserved the defendant's right to appeal. See Commonwealth v. Gomez, 480 Mass. 240, 252 (2018); Mass. R. Crim. P. 12 (b) (6), as appearing in 482 Mass. 1501 (2019). 

[Note 2] Officer Vieira's name is spelled variously in the record. We adopt the spelling used by the judge in his findings. 

[Note 3] At the hearing, the Commonwealth did not call any dispatch personnel to testify, nor did it offer the recording of the 911 call. Contrast Commonwealth v. Edwards, 476 Mass. 341, 342 n.2 (2017). 

[Note 4] Officer McCabe described that he and other officers had responded to the area in the past based on reports of fights, stabbings, and "rave parties"; he was also aware of an incident the previous winter in which shots were reportedly fired into the music studio from which this 911 call originated. 

[Note 5] Officer Sabella's name is spelled variously in the record. We adopt the spelling used by the judge in his findings. 

[Note 6] The search of the car produced a bag of drugs in the center console, $240 in the sunglasses compartment, a wallet with a debit card in the defendant's name in the driver's side door, and insurance paperwork in the defendant's name in the glove compartment. 

[Note 7] The judge did not have the benefit of the Supreme Judicial Court's decision in Matta, because he ruled on the motion to suppress four months before that case was decided. See Matta, 483 Mass. at 363 (clarifying that inquiry is not whether defendant was free to leave; "the inquiry must be whether, in the circumstances, a reasonable person would believe that an officer would compel him or her to stay"). However, the judge's factual findings were clear, and we are bound by them. 

[Note 8] "Independent corroboration is relevant only to the extent that it was known to the police before the stop was initiated; information learned during an investigative stop cannot provide reasonable suspicion for the stop." Commonwealth v. Anderson, 461 Mass. 616, 623, cert. denied, 568 U.S. 946 (2012). See Commonwealth v. Barros, 435 Mass. 171, 178 (2001). 

[Note 9] In Edwards, 476 Mass. at 342-344, the 911 recording was admitted in evidence. The caller identified himself by name, set forth a detailed description of the defendant's suspicious conduct, and stayed to confer with the police, pointing out the car where the defendant had been seen removing and replacing an unholstered gun at 1:30 A.M. in an area known for reports of shots fired. See id. 

[Note 10] The judge's finding was based on the officer's testimony describing previous crimes in the area. This characterization was strenuously argued by the prosecutor at the motion hearing. In its appellate brief, the Commonwealth also characterized the street in that manner, but stated at oral argument that it no longer relied on this factor. Since the suppression hearing, cases have emphasized caution with respect to this characterization. See Evelyn, 485 Mass. at 709; Commonwealth v. Torres-Pagan, 484 Mass. 34, 42 (2020) ("the 'high crime' factor did not carry the day with regard to whether the defendant was armed and dangerous"). The judge did not have the benefit of either Torres-Pagan or Evelyn at the time of the suppression hearing. 

[Note 11] We further note that the officer was not asked whether he felt the backpack before opening it. In the absence of some evidence that the officer could feel what he thought to be a gun, opening the backpack constituted an improper warrantless search, even if there had been reasonable suspicion to stop the defendant. See Commonwealth v. Pagan, 440 Mass. 62, 71-72 (2003); Commonwealth v. Rutledge, 86 Mass. App. Ct. 904, 905 (2014). 

 
 Home/Search 
 Table of Cases by Citation
 Table of Cases by Name 
 

 Commonwealth of Massachusetts. Trial Court Law Libraries. Questions about legal information? Contact Reference Librarians.