NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-398

COMMONWEALTH

vs.

DAVAUGHN GARY.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant appeals from a Boston Municipal Court judge's order denying a motion to suppress evidence obtained after police searched the defendant's car following a traffic stop. The defendant argues that the motion should have been granted because the Commonwealth failed to establish that the stop was justified by the requisite reasonable suspicion.  We agree and reverse the order denying the motion to suppress.

Background.  We recite the facts as found by the motion judge, supplemented by undisputed testimony from the suppression hearing that the motion judge appeared to credit.  See Commonwealth v. Jones-Pannell, 472 Mass. 429, 431 (2015).  On March 12, 2021, a 911 caller reported to the South Eastern Massachusetts Regional Emergency Communication Center (SEMRECC) that a vehicle was operating erratically on Route 1.  The

caller, who stayed on the line for several minutes, stated that the vehicle's three occupants were smoking marijuana, and that one occupant brandished[1] a firearm.  The police report indicated that "there was a very strong language barrier while communicating with [the caller]."  The caller identified the vehicle as a black Chevrolet four-door sedan and provided the license plate number.  The license plate was from New York.  When Foxborough police officers queried the license plate, they found that it was registered to a blue Chevrolet Malibu owned by a private rental company.  There is no evidence that the police knew anything further about the rental company nor that any officer attempted to contact the rental company to ascertain the name or address of the renter of the car.

The 911 caller provided a name and phone number to the dispatcher but did not answer when officers attempted to contact him at the provided number later that day.  Five days later, the officer again attempted to contact the caller and left a voicemail.  A person identifying himself by name as the 911 caller responded to the voicemail about twenty-five minutes

---

[1] The police report uses the term "brandished," however, because the 911 call was not introduced into evidence, we do not know if the caller used this word, or if this is a characterization by police of the events the caller described to the dispatcher.

2

later and told the officer he had nothing further to add and that he would not come to the station.

Based on the information the 911 caller provided, on that same day SEMRECC issued a "be on the lookout" bulletin (BOLO) to alert local law enforcement about the vehicle. Foxborough police also drafted a police report describing the 911 call and police efforts to investigate the alleged incident. The Commonwealth introduced this report into evidence at the suppression hearing, but did not introduce either the contents of the BOLO bulletin nor a recording of the 911 call. The motion judge instead heard testimony from Boston police officers Ryan MacDonald and Brian Picarello regarding what information they gleaned from the BOLO bulletin.

On March 25, thirteen days after the 911 call, while on routine patrol, Officers MacDonald and Picarello queried a New York license plate on a vehicle they encountered because Officer Macdonald noticed that the plate was a different color than other New York plates he had seen. The BOLO alert appeared because the license plate matched the one given by the 911 caller. The judge found that the BOLO "indicat[ed] that a person in that car with that license plate had brandished a firearm in the course of some incident."

When questioned at the motion to suppress hearing regarding the reason the officers stopped the defendant's vehicle, Officer

3

MacDonald testified, "I was stopping the vehicle to exhaust or satisfy the BOLO that was for the car. And because that was -- the BOLO stated that somebody in the vehicle brandished a firearm at somebody." He further testified that at the time of the stop he did not have access to the police report detailing the 911 caller's allegations and that the BOLO bulletin "didn't have any suspect information whatsoever."

At the time of the stop, the officers knew from the BOLO that the vehicle was a rental vehicle, but had no further information regarding who had rented the vehicle as of the date of the incident or for how long. The officers did not know the race of the driver. The defendant was the only person in the car. Officer Picarello approached the front passenger's side of the vehicle and immediately and loudly instructed the defendant to "step out of the car."[2] Officer MacDonald approached the front driver's side and asked the defendant, "Is this your rental?" The defendant responded, "Yes, it is." The officer then asked, "How long have you had it?" The defendant responded, "About a month." Both officers repeatedly instructed the defendant to step out of the vehicle. Officer MacDonald opened the front driver's side door and Officer Picarello opened

_____

[2] The entire encounter is captured on the officers' bodycams and was reviewed by the motion judge and presented to this court.

the front passenger's side door.  Before complying with the officers' exit order, the defendant reached for a black backpack that was in the front passenger's seat and said, "I'm taking my bag."  Officer Picarello responded, "Don't touch the bag . . . . The bag's gonna stay in the car."  The defendant then complied with the exit order and Officer MacDonald escorted him to the back of the vehicle where several other officers were standing. Officer Picarello searched both the glove compartment and the backpack.  Inside the backpack, he discovered a firearm.  The defendant was arrested.[3]

The defendant moved to suppress the evidence on the grounds that the officers did not have reasonable suspicion to stop his vehicle.  After the motion to suppress was denied, the defendant pleaded guilty to unlawful possession of a firearm and unlawful possession of ammunition on the condition that he be allowed to appeal the judge's order denying his motion to suppress.  See Mass. R. Crim. P. 12 (b) (6), as appearing in 482 Mass. 1501 (2019).

---

[3] The defendant was charged with unlawful possession of a firearm, G. L. c. 269, § 10 (a); unlawful possession of ammunition, G. L. c. 269, § 10 (h); and unlawful carrying of a loaded firearm, G. L. c. 269, § 10 (n).  He was also charged with possession of cocaine, G. L. c. 269 § 10 (a), which police discovered on the defendant's person after he arrived at the police station.

Discussion.  1.  Standard of review.  "When reviewing the denial of a motion to suppress, we accept the motion judge's findings of fact absent clear error, but independently review the judge's ultimate findings and conclusions of law." Commonwealth v. Judge, 100 Mass. App. Ct. 817, 819 (2022), quoting Commonwealth v. Tejada, 484 Mass. 1, 7, cert. denied, 141 S. Ct. 441 (2020).  "We make an independent determination as to the correctness of the judge's application of constitutional principles to the facts as found."  Commonwealth v. Watson, 455 Mass. 246, 250 (2009).

2.  Reasonable suspicion.  The defendant argues that the motion judge erred in finding that the officers had reasonable suspicion to stop the defendant's vehicle based on the information contained in the BOLO.  "Once a seizure has occurred, the issue for the court is 'whether the stop was based on an officer's reasonable suspicion that the person was committing, had committed, or was about to commit a crime.'" Commonwealth v. Meneus, 476 Mass. 231, 235 (2017), quoting Commonwealth v. Martin, 467 Mass. 291, 303 (2014).  Reasonable suspicion "is measured by an objective standard, and the totality of the facts on which the seizure is based must establish 'an individualized suspicion that the person seized by the police is the perpetrator' of the crime under investigation."  Commonwealth v. Ford, 100 Mass. App. Ct. 712,

6

715 (2022), quoting Meneus, supra. When police officers are investigating reports concerning an individual with a gun, the reasonable suspicion analysis "should include . . . the government's need for prompt investigation." Commonwealth v. Stoute, 422 Mass. 782, 791 (1996), quoting United States v. Bold, 19 F.3d 99, 102 (2d Cir. 1994).

The 911 caller provided only a limited description of the three occupants of the car, describing them as three Black males. See Commonwealth v. D.M., 100 Mass. App. Ct. 211, 217 (2021). He stated that one occupant had brandished a firearm, but did not specify if the person who did so was the driver or a passenger, or where in the car the person was seated. Although further details would have been helpful, we assume for present purposes that the information provided gave rise to a reasonable suspicion that that the crimes of unlawful possession of a firearm and negligent operation of a motor vehicle were committed in the rental car, thirteen days before the defendant was stopped by the police.

However, we cannot conclude on this record that there was reasonable suspicion to stop the defendant driving the rental car thirteen days after the brandishing incident took place. The key point is that this was a rental car. Where "the officers did not know the identity of the renter or the terms of the rental arrangement" with respect to a rental car, we have

7

held that "the absence of details about its rental weakened any link between the shooter and the defendants" even when the car was stopped just two days after a shooting. Commonwealth v. Jordan, 469 Mass. 134, 146 (2014). The Commonwealth put no information in the record from which one could conclude that it was reasonable to think that, nearly two weeks after the incident, the car would be in the hands of the same person who was renting it at the time. Cf. Commonwealth v. Powell, 102 Mass. App. Ct. 755, 759 (2023). Moreover, we note that the police could have investigated more either adding to the BOLO, or prior to the stop, to bolster any link between the driver and the suspect the 911 caller observed. See G. L. c. 90, § 32D (motor vehicle rental records shall be made available to police upon request).

We conclude based on the totality of the circumstances, that, at the time of the stop, the police did not have sufficiently individualized suspicion that the defendant had committed a crime. As the car was a rental, it was not reasonable, prior to stopping the car, to believe that the defendant had any connection to the incidents that had occurred in the car thirteen days earlier. The law of unreasonable searches and seizures is "practical, and nontechnical," Commonwealth v. Murphy, 95 Mass. App. Ct. 504, 509 (2019), and common sense tells us that a person driving a rental car

8

thirteen days after a prior incident may very well not be the same person who was driving it thirteen days earlier.  The police had means to further investigate the facts prior to the stop, but did not.  In light of the substantial gap in time, where the police had no knowledge of additional facts indicating that the car remained with the same person who had rented the car at the time of the incident, the stop was unreasonable.  See Commonwealth v. Sertyl, 101 Mass. App. Ct. 836, 840 (2022).  The order denying the motion to suppress is reversed, and the matter is remanded for further proceedings.

So ordered.

By the Court (Rubin,
  Englander & D'Angelo, JJ.[4]),

Assistant Clerk

Entered:  June 5, 2024.

---

[4] The panelists are listed in order of seniority.