NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-270

COMMONWEALTH

vs.

JEREMY E. WINAM.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After a 911 caller reported seeing a man with a gun, the police stopped the defendant and recovered a gun and a bag of cocaine from his person.  The defendant moved to suppress this evidence on the ground that the police did not have reasonable suspicion of a crime to justify the stop.  A District Court judge denied the motion, and the defendant was then convicted, after a jury-waived trial before a different judge, of carrying a firearm without a license, defacing a serial number on a firearm, and possessing a Class B substance.  The defendant appeals from his convictions on the sole ground that the motion judge erred in denying his motion to suppress.  We agree and thus vacate the convictions.

Background.  The motion judge credited the testimony of Chelsea police Officer Daniel Arteaga, who was the only witness who testified at the suppression hearing.  We summarize the motion judge's factual findings, supplemented by facts derived from Officer Arteaga's uncontroverted testimony.  See Commonwealth v. Isaiah I., 448 Mass. 334, 337 (2007), S.C., 450 Mass. 818 (2008).

At approximately 3:45 P.M. on April 9, 2022, Chelsea police received a 911 call about "a white male, with a camouflage top," "brandishing" a gun in the area of Route 16 and Garfield Street. The caller specifically described seeing the man pull out a gun and place it in his pants.

Officer Arteaga drove his marked cruiser to the area. After seeing no one matching the caller's description, Officer Arteaga entered a nearby convenience store and spoke to an employee there.  The employee stated that a man wearing a camouflage shirt had come into the store, purchased some items, and left.[1]

Soon after leaving the store, Officer Arteaga saw a man matching the caller's description in the area of Sagamore

---

[1] The motion judge clearly erred in finding that the police had information that a man had brandished a firearm "at" or "in" the store.  There was no testimony to that effect.  Rather, Officer Arteaga testified that the reported incident occurred in the area near the store.

2

Street.  Officer Arteaga approached and told the man, later identified as the defendant, that the police were "investigating someone . . . who had just . . . brandished a weapon" and asked whether he "had seen anyone who could have done that."  The defendant "denied seeing anyone or being anyone that had done" what Officer Arteaga described.  The conversation ended, and Officer Arteaga allowed the defendant to go on his way.[2]

While the defendant was still in his line of sight, Officer Arteaga received a call from another officer who was with the 911 caller.  When Officer Arteaga relayed that the defendant had a "fresh haircut," the other officer confirmed that this additional detail matched the man seen by the caller.  Officer Arteaga then communicated over his radio that he was going to approach the defendant again.  At this point the defendant was between fifty and one hundred yards away from where Officer Arteaga had spoken to him initially.

Officer Arteaga activated his cruiser lights and drove toward the defendant.  By the time he reached the defendant, two other officers were already there, arriving in separate cruisers with their lights on.  The three officers got out of their

_____

[2] The motion judge clearly erred in finding that Officer Arteaga asked the defendant during this initial encounter whether he had been in the store and that the defendant admitted he had.  Officer Arteaga testified that a fellow officer asked this question later, after the defendant was stopped.

3

vehicles and surrounded the defendant.  When one officer asked the defendant if he had a gun, the defendant said he did not and raised his hands, causing his shirt to lift up to reveal a gun tucked into his waistband.  The defendant was placed under arrest after he admitted that he did not have a license to carry a firearm.  Later, during the booking process, a small bag of cocaine was found on the defendant's person.

Discussion.  When reviewing a decision on a motion to suppress, we adopt the judge's factual findings absent clear error but "independently determine the correctness of the judge's application of constitutional principles to the facts as found."  Commonwealth v. Catanzaro, 441 Mass. 46, 50 (2004).  The burden was on the Commonwealth to establish that the stop of the defendant was "within constitutional limits."  Commonwealth v. DePeiza, 449 Mass. 367, 369 (2007).

The defendant argues, and the Commonwealth does not contest, that he was seized in a constitutional sense when Officer Arteaga and the other two officers surrounded him.  We agree that, in these circumstances, the officers' act of surrounding the defendant "objectively communicated that [they] would use [their] police power to coerce [the defendant] to stay."  Commonwealth v. Matta, 483 Mass. 357, 362 (2019).  The defendant was thus seized by this point.

4

The question then is whether, at the time of the seizure, the officers had reasonable suspicion that the defendant "was committing, had committed, or was about to commit a crime." Matta, 483 Mass. at 365, quoting Commonwealth v. Martin, 467 Mass. 291, 303 (2014). Reasonable suspicion "must be based on specific, articulable facts and reasonable inferences drawn therefrom," rather than "a hunch." Commonwealth v. Barreto, 483 Mass. 716, 720 (2019), quoting Commonwealth v. Wren, 391 Mass. 705, 707 (1984).

Here, the facts known to the officers at the time of the seizure supported, at most, a hunch that the defendant was engaged in criminal activity. The 911 call did not alone create reasonable suspicion because "[c]arrying a gun is not a crime." Commonwealth v. Alvarado, 423 Mass. 266, 269 (1996). See Commonwealth v. Couture, 407 Mass. 178, 183, cert. denied, 498 U.S. 951 (1990). While acknowledging this point, the motion judge appeared to conclude that the call still provided reasonable suspicion because "[t]he information officers had was that an individual brandished a firearm at the [store]" and "it is a crime to brandish a firearm." As noted above, however, the testimony does not support the motion judge's findings that the 911 caller reported a man brandishing a firearm "at" or "in" the store or that the defendant admitted to being in the store prior

5

to the stop.  Furthermore, although Officer Arteaga used the word "brandish" in describing the 911 call, he confirmed on cross-examination that the caller did not report seeing the man point the gun at anyone, wave it around, or otherwise use it in a threatening manner.  Rather, the caller reported only that a man had pulled out a gun and put it in his pants.  This did not create reasonable suspicion of criminal conduct.  See Commonwealth v. Gomes, 458 Mass. 1017, 1019 (2010) (911 report of man holding gun in air did not justify stop where "[t]here was no evidence that the gun had been fired, pointed at another person, or otherwise handled in a way that posed a threat to someone, nor was there evidence that the defendant was a dangerous person").

Absent any evidence that the defendant posed an imminent threat to public safety, the Commonwealth had to show that the police had reasonable suspicion that the defendant was carrying the gun illegally, i.e., without a license, to justify the seizure.  See Alvarado, 423 Mass. at 269-271.  The Commonwealth points to two factors, in addition to the 911 call, that it says created such suspicion:  Officer Arteaga's observation of the defendant "clutching his side while walking" away from their initial encounter; and the defendant's "lying" to Officer

6

Arteaga during their initial encounter that he was not carrying a firearm.[3]  We are unpersuaded.

With regard to the defendant's clutching his side, Officer Arteaga testified that he noticed that behavior after the stop and did not see any odd, suspicious, or furtive movements from the defendant when he was walking away from their initial encounter.  Thus, to the extent the motion judge found that the defendant was clutching or leaning to his side as he walked away, that finding is at odds with Officer Arteaga's testimony.  In any event, even were we to agree with the Commonwealth that the testimony is ambiguous in this respect, the defendant's manner of walking adds little to nothing to the reasonable suspicion calculus where Officer Arteaga did not testify about any conclusions he drew from his observations based on his experience and training.[4]  Cf. DePeiza, 449 Mass. at 373 ("The officers' suspicion that the odd way of walking was a sign of a firearm was not a mere hunch, but was the result of the

_____

[3] The Commonwealth appropriately conceded at oral argument that Officer Arteaga's testimony does not support the assertion in the Commonwealth's brief that the defendant was "evasive" during the initial encounter.  The testimony was that the defendant was evasive after the stop.

[4] After he was stopped, the defendant explained to the officers that he was leaning to his side because he had an injury from falling off a ladder.

7

application of their experience and training at the police academy to their detailed observations of the defendant").

With regard to the Commonwealth's second argument, we need not decide whether a person's lying about carrying a firearm can create reasonable suspicion that that person is carrying the firearm illegally because, assuming that it can, Officer Arteaga's testimony does not show that the defendant lied. Contrary to the Commonwealth's characterization, Officer Arteaga did not testify that he asked the defendant if he was carrying a firearm. Precisely, his testimony was, "So I just went off with that party [the defendant] to kind of let him know that we're investigating someone who -- who had just, you know, brandished a weapon. To see -- asked him if he had seen anyone who could have done that." Officer Arteaga further testified that the defendant responded to his question by denying "seeing anyone or being anyone that had done that." On cross-examination, Officer Arteaga confirmed that the defendant's response was, essentially, "[I]t wasn't him." Given the ambiguity inherent in Officer Arteaga's question, the defendant's response, even if somewhat evasive, did not give rise to reasonable suspicion that he was carrying a firearm illegally. Cf. Commonwealth v. Holley, 52 Mass. App. Ct. 659, 665 (2001) ("ambiguous gesture" did not create reasonable suspicion to justify patfrisk).

There are no other facts that would support a finding of reasonable suspicion.  The stop of the defendant was therefore unlawful, and his motion to suppress should have been allowed.

Conclusion.  The order denying the defendant's motion to suppress evidence is reversed, the judgments are vacated, and the findings are set aside.  The case is remanded for entry of an order allowing the defendant's motion to suppress.

So ordered.

By the Court (Sacks, Shin & Hershfang, JJ.[5]),

Clerk

Entered: October 25, 2024.

---

[5] The panelists are listed in order of seniority.