NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-1188

COMMONWEALTH

vs.

REGINALD BOWMAN.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After his motion to suppress was denied, the defendant, Reginald Bowman, sought leave from the single justice of the Supreme Judicial Court to pursue an interlocutory appeal pursuant to Mass. R. Crim. P. 15 (a) (2), as amended, 476 Mass. 1501 (2017).  The single justice granted his request.  This appeal followed.

The defendant was arrested outside a retail store in Boston's Back Bay neighborhood after Boston police received an anonymous tip from a 911 caller who purportedly witnessed an individual pass a firearm to someone fitting the defendant's description in broad daylight before they both entered the store.  On appeal, the defendant argues that the motion judge

erred by concluding (1) that the anonymous witness's tip was reliable; and (2) that the police officer who arrested the defendant had reasonable suspicion to stop and frisk him for a weapon. We affirm.

Background. The following facts are drawn from the judge's findings and from undisputed evidence in the record that he implicitly credited. See Commonwealth v. Tremblay, 480 Mass. 645, 654-655 (2018); Commonwealth v. Jones-Pannell, 472 Mass. 429, 436 (2015). The defendant does not challenge any of the judge's findings.

On October 30, 2021, at approximately 2:53 P.M., an anonymous person called 911 and reported that he was outside the Nike store at 200 Newbury Street in Boston's Back Bay neighborhood. He stated that he had observed a Black "kid" in a red "hood" pass a gun to another Black "kid" in a black "hood", before they both went into the store. The 911 caller stated that his child mentioned that the "guy" in the black hood also wore a black ski mask, though the caller admitted he did not see that. With that, the 911 caller hung up.

The dispatcher then called the 911 caller back and asked for more information. The 911 caller reiterated that "the kid in the red hood gave the gun to the kid in the black hood" and added that the kid in the black hood "put [the gun] in his pocket" before going into the store. The 911 caller described

2

them both as between sixteen and eighteen years old and approximately 5'10" to 5'11" in height.  The 911 caller indicated that the male in the red hood was skinnier, while the male in the black hood was medium-sized.  The 911 caller refused to identify himself or cooperate further.  To the contrary, he indicated that he had already left the area and hung up again.

The dispatcher immediately broadcast this information,[1] and two Boston Police officers, Philip Kearney and his partner, responded.  They arrived at the scene within three to five minutes of the radio call.  They were among the first of approximately twenty officers to respond.  Upon arrival, they encountered a crowded scene —- at least fifty people inside the store and between fifty and one hundred gathered outside.

Officer Kearney entered the store, looking for a thin, young Black male in a red hoodie and a young Black male in a black hoodie and ski mask.  Near the register, he observed two young men matching the description provided.  Officer Kearney did not engage them.  Instead, officers spoke with store personnel who reported that nothing was amiss.  Officer Kearney then walked outside and stood by.  While he was outside, Officer Kearney turned on his body-worn camera.

---

[1] The dispatcher referred to suspects wearing "hoodies" rather than "hoods."  We adopt that convention.

After some time, a thin young Black man in a red hoodie exited the store, wearing a surgical mask.  He was with a young Black man wearing a black and gray hoodie, but no mask.  Officers stopped them and pat-frisked them but found nothing incriminating.

Officer Kearney recognized the young man in the red hoodie as one of the two people he had seen at the register.  Because this young man was now with a different person -- the young man in the gray and black hoodie without a mask -- Officer Kearney concluded that the young man in the black hoodie and ski mask was still inside the store.  Accordingly, Officer Kearney re-entered the store to look for him.  The person in the black hoodie was seated on a bench in the middle of the store behind a group of people.  He was vigilant and looking at Officer Kearney.  Almost immediately after Kearney passed him, the person in the black hoodie got up to leave the store and Kearney followed.[2]  The defendant turned left onto Newbury Street away from the large group of officers who had gathered outside the

_____

[2] Officer Kearney's body-worn camera did not capture the defendant seated near the entrance.  Rather, it revealed that Officer Kearney entered the store, immediately walked to the register, turned around and saw the defendant walking toward the exit.  Officer Kearney followed the defendant out of the store. See Commonwealth v. Tremblay, 480 Mass. 645, 654-655 (2018) (appellate court may review documentary evidence independently). The distinction is not material to our analysis.

4

store and the young man in the red hoodie, who had been stopped by two of those officers as he exited the store onto Exeter Street and was being detained.

Officer Kearney's body-worn camera depicted the defendant walking at a normal gait down Newbury Street with his hands at his side.  The defendant did not look back to see if Officer Kearney was following him.  Officer Kearney approached the defendant on the sidewalk from behind and called out, "My man can I just talk to you for a sec?"  The defendant turned around; he was wearing a black ski mask.  Officer Kearney immediately walked toward him.  Officer Kearney testified that as he approached the defendant, he saw a heavy object weighing down the pocket on the front of the defendant's hoodie.  Based on his training and experience, Kearney believed the defendant "might have a weapon."  Officer Kearney quickly grabbed the defendant's arm, asked, "Do you have anything right here?", patted his hoodie pocket, and felt "a shape consistent with . . . a firearm."  As he did so, he saw the handle of a firearm. Immediately after feeling the object, he pressed the defendant against a parked car and called out for assistance from other officers.  His body-worn camera footage established that roughly two seconds elapsed from the moment Officer Kearney grabbed the defendant's arm, to the pat frisk and confirmation of a firearm, to the call for assistance.

Officer Kearney then placed the defendant under arrest and asked if he had a license to carry a firearm. The defendant responded that "he was not from around here."

Discussion. "In reviewing a decision on a motion to suppress, we accept the judge's subsidiary findings absent clear error but conduct an independent review of [the] ultimate findings and conclusions of law" (quotations and citation omitted). Jones-Pannell, 472 Mass. at 431.

"To justify a warrantless investigatory stop, the police must have reasonable suspicion that the person they stop 'has committed, is committing, or is about to commit a crime.'" Commonwealth v. Morales, 106 Mass. App. Ct. 270, 272 (2025), quoting Commonwealth v. Silva, 366 Mass. 402, 405 (1974). "Reasonable suspicion must be based on specific and articulable facts and reasonable inferences therefrom, in light of the officer's experience" (quotation and citation omitted). Commonwealth v. Robinson-Van Rader, 492 Mass. 1, 8 (2023). "The test is an objective one." Silva, supra, at 406.

"When police suspicion arises not from officers' own observations but from an informant's tip, . . . the Commonwealth has the burden of establishing both the informant's reliability and the basis of [his] knowledge, although police corroboration may make up for deficiencies in one or both of those factors." Commonwealth v. Grinkley, 44 Mass. App. Ct. 62, 66 (1997),

citing Commonwealth v. Lyons, 409 Mass. 16, 19 (1990). "The two prongs of this analysis may also be referred to as the basis of knowledge test and the veracity test" (quotation and citation omitted). Morales, 106 Mass. App. Ct. at 273.

The basis of knowledge prong is satisfied where the caller "was describing [his] own firsthand observations." Commonwealth v. Westgate, 101 Mass. App. Ct. 548, 552 (2022). However, in a reasonable suspicion case, "[e]stablishing the veracity prong where an anonymous 911 caller is involved is less straightforward, as no evidence regarding his or her past reliability or honesty typically will be available." Commonwealth v. Manha, 479 Mass. 44, 46 (2018).

The reliability of an anonymous tip may be established if the caller believes that he can be identified by police. "[C]allers who are aware that their calls are being recorded and that their telephone numbers can be traced" are thought to be less likely to make false reports. Manha, 479 Mass. at 47. Conversely, "a caller who believes the call is anonymous is not accorded the reliability of a caller who believes they can be identified, because a caller who believes they are anonymous will not be deterred by the risk of being charged with false reporting." Morales, 106 Mass. App. Ct. at 274. "[E]ven if the police are able to recover the telephone number and identity of a 911 caller, . . . [i]t is the tipster's belief in anonymity,

not its reality, that will control his behavior" (quotation and citation omitted). Commonwealth v. Depeiro, 473 Mass. 450, 455 (2016). Here, we must treat the 911 caller as anonymous because "[he] did not testify at the hearing on the motion to suppress, and there was no evidence provided regarding [his] identity or whether [he] knew that [he] was identifiable to police." Manha, supra.

The motion judge found that the 911 caller's basis of knowledge was adequately established because he was reporting his first-hand observation that a thin young Black man in a red hoodie passed a firearm to a medium sized Black man of roughly the same age and height in a black hoodie. As for the veracity prong, the motion judge acknowledged that because the officers knew nothing about the 911 caller, they could not know whether he was being truthful. However, he noted that the officers were able to independently corroborate the information provided by the caller through their investigation of the details provided by the caller, and that independent corroboration could satisfy the veracity prong.

The defendant challenges the judge's finding that the anonymous witness's basis of knowledge was adequately established. The defendant characterizes the description of the suspects as so broad and general that it "could fit many people in the area." We disagree.

8

We conclude that the 911 caller's basis of knowledge was established by his report of a first-hand observation at 2:53 P.M. that a skinnier young Black man in a red hoodie had given a gun to a medium-sized young Black man of roughly the same age and height in a black hoodie, who put it in his pocket before they both entered the store. The basis of knowledge prong is satisfied because the caller "was describing [his] own firsthand observations." Westgate, 101 Mass. App. Ct. at 552.

We understand the defendant's argument here to be that the anonymous tip was too vague "to identify a determinate person" with sufficient particularity. Commonwealth v. Sertyl, 101 Mass. App. Ct. 836, 840 (2022). See Commonwealth v. Warren, 475 Mass. 530, 534 (2016) ("The essence of the reasonable suspicion inquiry is whether the police have an individualized suspicion that the person seized is the perpetrator of the suspected crime); Commonwealth v. Depina, 456 Mass. 238, 243 (2010) (stop based on dispatch is lawful if "the description of the suspect conveyed by the dispatch had sufficient particularity that it was reasonable for the police to suspect a person matching that description").

Here, four factors allowed Officer Kearney to identify a person matching the description in the tip with "sufficient particularity." First, the tip described a 5'10", skinny, young Black male in a red hoodie together with a medium-sized, young

9

Black male approximately the same age and height in a black hoodie, wearing a ski mask.  Officer Kearney identified two suspects together fitting every aspect of that description.  Contrast Warren, 475 Mass. at 535 (suspects described as three black males, two wearing dark clothing and one wearing a red hoodie; no description of facial features, height, weight, or other physical characteristics).  Second, because Officer Kearney responded very quickly -- within three to five minutes -- his initial identification of the suspects was very close in time to the 911 call.  See id. at 536 ("proximity of the stop to the time and location of the crime is a relevant factor in the reasonable suspicion analysis" and "[p]roximity is accorded greater probative value in the reasonable suspicion calculus when the distance is short and the timing is close").  Third, because the tip indicated that the suspects went into a specific store, Officer Kearney identified the suspects in the precise location the caller said they would be.  See id.  Fourth, Officer Kearney's quick investigation, creating a tight and consistent relationship between the time and location of both the tip and the identification, corroborated the particularity of the tip.  Contrast Warren, 475 Mass. at 535-537 (victim described three suspects carrying his stolen backpack; defendant was one of two people stopped, and neither was carrying a backpack; suspects' flight path was "mere

10

conjecture"; defendant was stopped a mile from the crime scene and approximately twenty-five minutes after the crime; "timing and location of the stop lacked a rational relationship to each other"); Grinkley, 44 Mass. App. Ct. at 72 (report that "one of [a] group of [B]lack youths had a gun did not serve to narrow the range of suspects" to anyone in the group, much less the defendant). At that point, Officer Kearney had properly narrowed his investigation to the defendant.

As noted above, police must also establish the reliability of an anonymous tip through investigation before they may seize and search a suspect. "Corroboration by police of an informant's predictions as to what the police will find, particularly predictive information regarding nonobvious details beyond those apparent to a casual bystander, is perhaps of greatest significance in justifying police inquiries in reliance on the tip" (quotation and citation omitted). Grinkley, 44 Mass. App. Ct. at 70. See Commonwealth v. Gomes, 458 Mass. 1017, 1018-1019 (2010) (stop and search based on unverified anonymous tip unreasonable because there were "no predictions by the caller of facts later confirmed by the police, to show the caller had inside knowledge; and no evidence of corroboration by the police of more than innocent details"); Morales, 106 Mass. App. Ct. at 275 (same); Sertyl, 101 Mass. App. Ct. at 840 (stop

and search based on anonymous 911 call unreasonable because no evidence of caller's reliability).

For purposes of determining the reliability of the tip, the motion judge cited Officer Kearney's testimony that when he first entered the store, he saw a thin Black male wearing a red hoodie with a Black male wearing a black hoodie and a ski mask. On its own, this was at best an "obvious nonincriminating fact[] that would be easily observable to any bystander" and not "inside information that provides a legitimate inference of personal knowledge" of criminal conduct. Grinkley, 44 Mass. App. Ct. at 67. However, Officer Kearney was able to corroborate the veracity of the 911 caller's tip with additional details he observed.

After police stopped the young man in the red hoodie, Officer Kearney went into the store, located the defendant, and followed him. As the motion judge noted, Officer Kearney testified that when he followed the defendant outside the store, he noticed "something was weighing down the front of his sweatshirt pocket" that was at least consistent with a firearm. Officer Kearney testified that he carried a firearm every day and was familiar with its weight.[3] His observation corroborated

_____

[3] The parties agree that the seizure occurred when Officer Kearney grabbed the defendant's arm. Officer Kearney testified that he observed the heavy object weighing down the defendant's front hoodie pocket before the seizure.

the 911 caller's report that the medium sized young black man in the black hoodie put the firearm in his pocket.  Together, these observations suggested that the 911 caller had "inside information that provides a legitimate inference of personal knowledge" of criminal conduct.  Grinkley, 44 Mass. App. Ct. at 67.

Finally, the fact that both the young man in the red hoodie and the defendant were wearing masks added something to the veracity of the 911 caller's tip.  The fact that both young men were wearing masks, after allegedly transferring a firearm, and immediately before walking into a retail store, was consistent with an intent to conceal their identity during the commission of a crime.[4]

In total, these facts established the veracity of the 911 caller's tip.  Therefore, the tip became a specific and articulable fact that, combined with the other evidence Officer

---

[4] We note that masking was a common practice in October 2021, in the midst of the COVID-19 pandemic.  See https://www.who.int/europe/emergencies/situations/covid-19 (The World Health Organization declared an end to the global COVID-19 pandemic on May 5, 2023).  As Officer Kearney's body-worn camera footage illustrated, several shoppers in the store and several police officers, were wearing masks.  Accordingly, the fact that the defendant was wearing a mask, by itself, would not have corroborated the anonymous tip.

Kearney had developed, supported an objective basis to form a reasonable suspicion that the defendant possessed a firearm.

The defense also challenges the reliability of the 911 caller's tip on the grounds that it did not establish a basis for reasonable suspicion of criminal activity because "the mere possession and carrying of a gun is not a crime." Grinkley, 44 Mass. App. Ct. at 70. The defendant argues that this case is analogous to Gomes, 458 Mass. at 1017. In that case, the Supreme Judicial Court concluded that an anonymous tip that a man was standing on a street pointing a gun in the air did not supply police with reasonable suspicion to conduct an investigatory stop where "[t]here was no evidence that the gun had been fired, pointed at another person, or otherwise handled in a way that posed a threat to someone." Id. at 1019.

This case is distinguishable from Gomes because Officer Kearney's investigation corroborated the 911 caller's report that one person who appeared to be under twenty-one years old had passed a gun to a second, masked person, who also appeared to be under twenty-one, before they both walked into a retail store. Therefore, at the time Officer Kearney seized the defendant, there was an objective basis to form a reasonable suspicion, based on specific and articulable facts, that the defendant planned to commit an armed robbery, in violation of G. L. c. 265, § 17, when he walked into the store. See

14

Commonwealth v. Benitez, 464 Mass. 686, 689-690 (2013) (listing elements of armed robbery). Moreover, because the defendant appeared to be under twenty-one,[5] the evidence supported a reasonable suspicion that the defendant illegally possessed a firearm. See G. L. c. 140, § 131 (d) (persons under twenty-one are prohibited from carrying a firearm). In short, there was objective evidence that the suspect "[had] committed, [was] committing, or [was] about to commit a crime" (citation omitted). Morales, 106 Mass. App. Ct. at 272.[6] Contrast Id. at 276 (finding anonymous tip did not warrant reasonable suspicion where "the police were unable to corroborate the witness's tip in its assertion of potential illegality").

Conclusion. Officer Kearney's seizure and pat frisk of the defendant were reasonable. The motion judge's orders denying the defendant's motion to suppress and motion for reconsideration are affirmed.

So ordered.

---

[5] In fact, the defendant had just turned twenty-one two months before his arrest.

[6] Because Officer Kearney's corroboration of the anonymous tip established an objective basis to form a reasonable suspicion that the defendant illegally possessed a firearm and planned to commit an armed robbery, there was also an objective basis to conclude that the defendant was armed and dangerous, justifying a pat frisk. See Commonwealth v. Torres-Pagan, 484 Mass. 34, 36 (2020).

15

By the Court (Meade,
Desmond & Wood, JJ.[7]),

Clerk

Entered:  February 11, 2026.

---

[7] The panelists are listed in order of seniority.